# Commonwealth v. Emmanuelle

320

C.P. of Delaware County, no. 1846-10.

*Jay W. Hannon,* for Commonwealth.
*Anna Durbin,* for defendant.

JENKINS, *J.,* January 7, 2011—Defendant is a larcenous landlord who obtained advance rent from three would-be tenants but then failed to provide them with lodgings or refund their advances. After a non-jury trial, the court found defendant guilty of three counts of theft by deception and sentenced her on each count to 10 days to 23 months imprisonment followed by three years probation. The sentences on each count run concurrently.

Defendant timely filed post-sentence motions challenging the weight of the evidence, which the court denied. Defendant then filed a timely notice of direct appeal and a timely concise statement of matters

complained of on appeal ("concise statement"). For the reasons articulated below, the court finds that the issues raised on appeal are devoid of merit and recommends that defendant's judgment of sentence be affirmed.

## I. Factual History

In June 2009, Chloe Etzler, a Maryland resident and a first-year medical student at Jefferson University, was looking for an apartment to rent near the university. Tr., 7/28/10 ("Tr."), p. 12. She found an advertisement posted by defendant on Craigslist for a first-floor master bedroom with hardwood floors at 617 Railroad Avenue in Havertown. Tr., p. 13. She e-mailed defendant, who invited her to visit the residence. Tr., p. 14.

On June 10, 2009, defendant met Etzler at the residence and showed her a second floor bedroom instead of the first floor room advertised on Craigslist. Tr., p. 16. Defendant told Etzler that she had to pay $1,347 to hold the room (first month's rent, last month's rent, plus a security deposit). Tr., pp. 16-17. Later that day, Etzler accepted these terms and mailed a check to defendant for $1,347. Tr., pp. 16, 19. Etzler told defendant that she would need the room for the entire school year, and defendant agreed that Etzler could move in on August 1, 2009. Tr., pp. 17-18, 20. Defendant cashed the check five days later. Tr., p. 20.

A few days before August 1, defendant informed Etzler that she could not move in because (a) two other roommates were unable to leave the residence and (b) defendant was putting the residence up for sale. Tr., p. 21. Defendant stated that she would return Etzler's money.

Tr., p. 22. Etzler gave defendant her mailing address but never received a check. Tr., p. 23.

When Etzler tried to contact defendant, defendant sent Etzler an e-mail threatening to refer the matter to her attorney unless Etzler stopped harassing her. Tr., p. 24. Defendant then offered to permit Etzler to move into her living room until one of her roommates was able to move out. Tr., p. 25. Etzler declined the offer. Tr., p. 25.

Defendant subsequently sent defendant a money order for $100 but failed to return the balance. Tr., pp. 28-29.

The second complainant, Elizabeth Sauter, was living in Tennessee and wanted to move back to this area for work-related and personal reasons. Tr., pp. 35-36. She saw an ad on Craigslist for the room at 617 Railroad Avenue. Tr., p. 36. She wrote two e-mails in response to the ad but heard nothing back. Tr., pp. 36-37. In July 2009, she sent a third e-mail, and defendant responded immediately. Tr., pp. 37-38.

Sauter visited the residence twice and then signed a lease for the first floor apartment on August 4, 2009. Tr., pp. 38, 51-53. The lease was missing a second page, but defendant told Sauter that this page did not exist. Tr., pp. 40-42. Sauter and defendant signed the lease and agreed on September 1, 2009 as the move-in date. Tr., p. 43. Sauter also wrote defendant a check for $1,347, which she understood was for the first and last month plus a security deposit. Tr., pp. 43-45. Defendant cashed the check the next day. Tr., p. 45. Relying on this agreement, Sauter stopped looking for a place to live. Tr., p.51.

On August 22, 2009, Sauter telephoned defendant to make sure her room was clean, because she wanted to move some belongings in on August 31. Tr., pp. 45-46. Defendant stated that Sauter could not move things in on August 31 because her roommate could not move out until the morning of the 31. Tr., p. 46. Defendant then said that she had lost her job and would have to sell the house because she could not pay her mortgage. Tr., p. 46. She added that two other friends, a man and a woman, one of whom was her lawyer, were moving in. Tr., p. 46. Finally, she said that Sauter's lease had a two-week cancellation provision, so if Sauter moved in and defendant's friends wanted to cancel Sauter's lease, Sauter would have to move out. Tr., p. 46. Confronted with this series of excuses, Sauter replied that the contract was broken and demanded her money back. Tr., p. 46. Defendant stated that she would repay the money within 10-14 days if Sauter wrote a letter to defendant's attorney as to why the contract was broken. Tr., p. 47. Defendant gave Sauter an incorrect e-mail and mailing address for the attorney, but Sauter discovered the error and sent a certified letter to both defendant and the attorney. Tr., pp. 47-48. Defendant refused to accept the certified letter. Tr., p. 48. Sauter attempted to reach defendant multiple times by e-mail and telephone, but to no avail. Tr., pp. 48-49.

In October 2009, the third complainant, Lisa Foreman, was searching for a place to live in Delaware County. Tr., p. 59. She found the listing for the second floor room at 617 Railroad Avenue on Craiglist and responded to the advertisement. Tr., pp. 59, 61. Defendant immediately

contacted Foreman, who visited the residence on October 17, 2009. Tr., p. 60. Defendant told Foreman that she owned the house and gave Foreman a tour. Tr., p. 61. Defendant added that she had previously agreed to rent the room to a man but would rather rent to her because the man gave her a "bad vibe," while Foreman seemed like a decent person. Tr., p. 62.

Defendant asked for a deposit of first month's rent, last month's rent and a security deposit totaling $1,500. Tr., p. 63. Foreman paid $800 on October 17 and $700 on October 29. Tr., pp. 64-65. Defendant told her that she could move in on November 15 or November 24 at the latest, but defendant predicted that her roommate would be out by the 15th. Tr., pp. 65-66. Relying on this agreement, Foreman moved in with her parents in New Jersey instead of renting another place for one month. Tr., p. 67.

In November 2009, defendant told Foreman that she could not move in until November 26 because defendant's friend had committed suicide and she was out of town for the funeral. Tr., p. 66. A couple of days before November 26, defendant informed Foreman that her roommate had delayed moving out until at least November 30, so Foreman could not move in until December 1. Tr., p. 66. This was highly inconvenient to Foreman because of the lengthy commute between New Jersey and her place of employment in King of Prussia and the high cost of gas and tolls. Tr., p. 67.

On November 30, 2009, defendant told Foreman that she could not move in until December 7 but proposed that

Foreman rent another room in the house. Tr., pp. 68-70. Foreman inspected the room but declined because there was a strong cat odor and it was a walk-through room. Tr., p. 70.

On December 6, 2009, defendant told Foreman that she could not move in until December 11, 2009. Tr., p. 71. At that point, Foreman requested her $1,500 back. Tr., p. 71. On December 14, 2009, Foreman picked up a check for $1,500 at the office of defendant's attorney, but the check was post-dated December 24, 2009. Tr., pp. 73-74. Foreman tried three times to cash the check without success. During her first attempt on December 27, 2009, the teller told her that the account lacked sufficient funds. Tr., p. 74. On December 31, 2009 and January 3, 2010, the tellers told her that they were unable to process the check. Tr., p. 74. After many more calls and e-mails from Foreman, defendant sent her a money order for $100. Tr., p. 75. Defendant paid Foreman the balance on March 17, 2010, one day before defendant's preliminary hearing in this case. Tr., p. 76.

Detective Christake of the Criminal Investigations Unit investigated defendant's conduct after receiving nine complaints concerning rental agreements at 617 Railroad Avenue in September and October of 2009. Tr., pp. 83-85. He found a number of listings for available rentals in the house on Craigslist. Tr., p. 85.

On October 27, 2009, posing as a Villanova nursing student, the detective responded to an ad posted on October 15, 2009. Tr., pp. 87-88. Later on October 27,

he received a response from an "Ash Emmanuelle" with an e-mail address of Ashleyemmanuelle@yahoo.com. Tr., p. 90. Defendant wrote that somebody else wanted the room but was having trouble coming up with the required deposit of the first and last month's rent and a security deposit. Tr., p. 91. In a subsequent e-mail, defendant wrote that the required deposit was $1,500 consisting of the first and last month's rent and a security deposit of $400. Tr., p. 91. Interestingly, defendant's communications with the detective took place within days after she had received $800 from Foreman.

The detective found that defendant had no permit to rent to student or regular renters. Tr., p. 92. The same advertisements for rentals appeared on Craigslist as recently as two weeks before trial. Tr., p. 93.

Defendant testified on her own behalf and admitted having three other rental agreements that fell through. First, in April 2009, she entered into a rental agreement with Jillian Stevenson, but she claimed that Stevenson cancelled the contract. Tr., p. 124. Defendant also claimed that she kept the money because Stevenson did not give her an address to send the money. Tr., p. 124. In May 2009, Kathryn Phillips agreed to rent the room on the first floor and made a deposit of $2,475. Tr., p. 125. Phillips did not move in because defendant delayed the move-in date. Tr., pp. 129-30. Defendant insisted that she could not return the deposit because she filed for bankruptcy on September 24, 2009 and could not give preferential treatment to Phillips under bankruptcy law. Tr., pp. 157-59. Lastly, on September 15, 2009, Peter Murray agreed to rent a room

and paid a deposit, but she told him before the scheduled move-in date of October 15, 2009 that she was selling the house. Tr., p. 137.

## II. Discussion

A. *The evidence was sufficient to support Emmanuelle's convictions for theft by deception.*

Two issues in defendant's concise statement (1 and 3) challenge the sufficiency of the evidence against her. The court will address these issues in this section.

Issue 1. Defendant argues that the evidence was insufficient to sustain her convictions for theft by deception because the "evidence did not show any false statement or representation on the date defendant obtained money." The court disagrees.

When reviewing a challenge to the sufficiency of the evidence, Pennsylvania appellate courts must view all the evidence and all reasonable inferences therefrom in the light most favorable to the commonwealth, the verdict winner. *Commonwealth v. Widmer*, 560 Pa. 308, 318, 744 A.2d 745, 751(2000). The evidence is sufficient to support the verdict when it establishes each material element of the crime charged against the defendant beyond a reasonable doubt. *Id.* An appellate court "may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995). "The commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence." *Commonwealth v. Cunningham*, 805 A.2d 566, 571 (Pa. Super. 2002), *alloc. denied*, 573 Pa. 663, 820 A.2d 703 (2003). The facts and circumstances established by the commonwealth need not preclude every possibility of innocence. *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

18 Pa.C.S. § 3922 provides in relevant part:

A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise. *Id.*

To obtain a conviction of theft by deception, the commonwealth must demonstrate the presence of a false impression and the victim's reliance on that impression. *Commonwealth v. Lawson*, 650 A.2d 876, 880 (Pa. Super. 1994), *appeal denied*, 540 Pa. 596, 655 A.2d 985 (1995).

According to defendant, she was unable to perform the agreements with the complainants, but she never harbored

intent to obtain or withhold the complainants' money by deception. Intent is "a subjective frame of mind" and is therefore

> ...difficult of direct proof[.] [W]e must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. *Commonwealth v. Roche*, 783 A.2d 766, 768 (Pa. Super. 2001), *appeal denied*, 568 Pa. 736, 798 A.2d 1289 (2002).

There is ample circumstantial evidence of defendant's intent to obtain and withhold the complainants' money by deception on the dates she obtained money. Defendant was in serious financial trouble and eventually had to file for bankruptcy. To ease her financial woes, she lured the three complainants (Etzler, Sauter and Foreman) into renting specific living space in her house and paying well over $1,000 as "advance rent" and "security deposits." Each complainant relied on her promise to rent residential space and stopped looking for other places to live. Instead of providing lodgings, defendant cashed their checks and then invented multiple excuses to prevent them from moving in. In Etzler's case, defendant cancelled the lease, claiming that two roommates would not move out and that she had to sell her house due to financial troubles. In Sauter's case, defendant stated that she had to sell her house, leaving Sauter with the prospect of dealing with an unknown landlord. In Foreman's case, defendant repeatedly pushed back the move-in date by claiming,

among other things, that her present roommate had still not moved out. All three complainants demanded their money back, but defendant avoided them through a variety of stalling tactics, such as (a) ignoring phone calls and e-mails, (b) refusing to accept letters demanding payment, (c) promising to return the money but doing nothing, (d) promising to repay the money if the complainant wrote a letter to defendant's attorney as to why the lease was broken, but then doing nothing after her attorney received the letter, (e) threatening legal action if the complainants kept on harassing her, and (f) in Foreman's case, giving her a post-dated check which the bank refused to cash. Defendant never paid Sauter back and only paid $100 back to Etzler. She repaid the entire amount back to Foreman, but only after criminal charges were filed. She also admitted collecting advance rent from three other people without returning their money: Jillian Stevenson, Kathryn Phillips and Peter Murray. She even attempted to obtain advance rent from Detective Christake a few days after receiving advance rent from Foreman, thus demonstrating intent to defraud more than one person at the same time.

In the words of § 3922, the evidence demonstrates defendant's pattern of "obtain[ing] and withhold[ing]" monies from victims by "creating the false impression" that they were paying advance rent for living space, then deliberately failing to provide such space, and then stalling or avoiding the victims when they attempted to get their money back. The victims relied on defendant's false impressions by paying advance rent and by no

longer searching for places to live. This evidence is as convincing as other appellate cases which have upheld theft by deception convictions. See *Commonwealth v. Fisher*, 682 A.2d 811, 813-14 (Pa. Super. 1996) (sufficient evidence supported convictions on 21 counts of theft by deception arising out of defendant's actions in convincing people to trust him and purchase property or services from him; victims relied upon defendant's misrepresentations that land was perkable and suitable for building when they purchased land, the fact that land was not perkable affected value of land, defendant failed to perform contracted-for perk tests, he failed to construct shell homes as required under certain contracts, and he repeatedly failed to return owed money to his dissatisfied customers, opting instead to avoid their phone calls and to take extended trips to Bermuda); *Commonwealth v. Atwood*, 601 A.2d 277, 285 (Pa. Super. 1991) (evidence supported conviction of defendant for theft by deception in connection with loan he obtained for $1,000; victim testified that defendant told her he would repay money prior to loan coming due, when victim tried to contact him at phone number he gave her she learned number was no longer in service, and defendant never attempted to contact her after loan balance became due); *Commonwealth v. Posavek,* 420 A.2d 532, 536 (Pa. Super. 1980) (evidence, other than fact that promises were not performed, was sufficient to prove theft by deception; while defendant was cooperative before victim paid him, victim had great difficulty contacting defendant after paying him).

Citing *Commonwealth v. Bentley*, 448 A.2d 628 (Pa.

Super. 1982), and *Commonwealth v. Dunmeyer*, 5 D. & C. 3d 30 (Somerset Cty. 1977), defendant argues that defendant intended to perform her agreements at their inception but simply failed to perform her promises, conduct which § 3922 exempts from criminal liability. These decisions are inapposite. *Bentley* held that the defendant did not commit theft by deception by obtaining partial payments on a home improvement contract. Although defendant failed to finish the job, he expended substantial resources on the job by working over an eleven-day period and using between two and four men to tear down an old porch and garage and install a footer. Unexpected complications kept the defendant from finishing the job (the type of concrete block to be used, the width of the porch and other expenses), but he did not intend to steal money from the homeowners without performing work. Similarly, in *Dunmeyer*, the defendant began but did not finish a painting contract. The trial court held that the defendant did not make false factual promises at the time he entered into the contract, but that extenuating circumstances prevented him from performing (his loss of his driver's license and inability to find help).

The defendants prevailed in *Bentley* and *Dunmeyer* because they intended to carry out their agreements at their inception and made good faith, albeit unsuccessful, attempts to perform. In this case, however, the commonwealth has submitted ample circumstantial evidence that defendant never intended to honor her agreements to lease rooms to the complainants. She intentionally *dishonored* the agreements by taking money from the complainants, preventing them from moving in, and

going to elaborate lengths to avoid repaying them. *Fisher, Atwood, Posavek,* supra. And while the defendants in *Bentley* and *Dunmeyer* only failed to perform one agreement, the present defendant (a) breached three agreements over a six-month period in 2009 shortly before taking refuge in bankruptcy court, (b) quite possibly breached multiple others, given her testimony about Stevenson, Phillips, and Murray, and (c) attempted to obtain advance rent from another person, Detective Christake, at the same time Foreman was paying her advance installments.

Thus, the evidence demonstrates that defendant made false statements or representations on the dates she obtained money from the complainants.

Issue 3. Defendant alleges in the third issue in her concise statement that the court erred in denying her motion for judgment of acquittal at the end of the prosecution's case.

This is no longer a viable issue. When, as here, the defendant does not rest following the denial of a motion for judgment of acquittal at the close of the common-wealth's case, but instead puts on a case in defense, the correctness of the ruling on the motion for judgment acquittal is no longer an available issue. Once the trial has proceeded to the presentation of defense evidence, the proper challenge on appeal is to the sufficiency of the entire body of trial evidence. *Commonwealth v. Hammock*, 466 A.2d 653, 654 (Pa. Super. 1983) (citing *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347,

353 A.2d 387, 388 (1976)).

Even if this issue were permissible, it would not succeed on the merits. The evidence is sufficient to sustain defendant's convictions even without considering defendant's evidence, because the testimony of the three complainants and Detective Christake clearly established all elements of the theft charges.

B. *The verdict was consistent with the weight of the evidence.*

Four issues in defendant's concise statement (2, 7, 8 and 9) challenge the weight of the evidence against her. The court will address these issues in this section.

Issue 2 states that the verdict was against the weight of the evidence, "because the evidence showed that the defendant had rooms available at the time she received security deposit and rent money. Renters changed their mind and breached the contracts with defendant." Defendant preserved this issue for appeal by filing post-sentence motions challenging the weight of the evidence. Pa.R.Crim.P. 607(A)(3).

An allegation that the verdict is against the weight of the evidence

> …is addressed to the discretion of the trial court. Our Supreme Court has explained that appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. A motion for new trial on the grounds that the verdict is contrary to the

weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Stated another way, and as the trial court noted, this court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court. *Commonwealth v. Sullivan*, 820 A.2d 795, 805-806 (Pa. Super. 2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003).

The question the trial court must answer, in the sound exercise of its discretion, is whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Sullivan*, 820 A.2d at 806 (citing *Commonwealth v. Widmer*, 560 Pa. 308, 320, 744 A.2d 745, 752 (2000)). Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Widmer*, supra, 744 A.2d at 753. "A trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is 'one of the least assailable reasons for granting or denying a new trial.'" *Id.* The court only abuses its discretion when the course

pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Id.*

The court acted well within its discretion by denying defendant's challenge to the weight of the evidence. In essence, defendant argues that the court erred by crediting the commonwealth's witnesses instead of her. The court, however, was free to believe all, part, or some of each witness's testimony. It carefully studied each witness and found the commonwealth's witnesses credible; defendant, on the other hand, struck the court as evasive and self-serving.

Etzler, the first complainant, testified that between July 28, 2009 and August 3, 2009, defendant informed her that the upstairs room she rented was not available because her two roommates were unable to leave. Etzler stated that defendant offered to allow her to "camp out [in her living room] until one of her roommates was able to move out." Tr., p. 25. Defendant claimed that the room was vacant and ready for Etzler by August 1, but Etzler breached the agreement by telling defendant that she decided to live closer to medical school. Tr., pp. 120-22. These different accounts raised a garden variety question of fact that the court determined in favor of the commonwealth, as it had full authority to do as factfinder. Since this decision rested upon sworn testimony of a credible witness, it was not "so contrary to the evidence as to shock one's sense of justice." *Sullivan*, 820 A.2d at 806.

Sauter, the second complainant, testified that after she signed the lease, and shortly before her move-in date, defendant told her that she would have to sell her house because she could not pay her mortgage. Tr., p. 46. Sauter cancelled the lease and requested her money back, but she never received it. Defendant agreed that she told Sauter about her need to sell the house. Tr., p. 116. She further contended that Sauter "changed her mind" about moving in at the last minute. Tr., p. 117. Defendant agreed that she initially agreed to pay Sauter back. Tr., p. 117. Nevertheless, she had to file Chapter 7 bankruptcy to avoid a tax sale on her house, and paying Sauter without paying other creditors would have violated bankruptcy law:

> Under bankruptcy code, you have to treat all creditors equally. You can't pay a preference to one creditor because the U.S. Trustee then is able to come and take back those payments, and if you're trying to pay back friends, that's...considered paying back insiders. Tr., pp. 118-19.

Defendant's attempt to use bankruptcy preference law as a shield against criminal liability does not ring true. Defendant's demeanor on the witness stand, as well as her pronounced pattern of taking advance rent from individuals without paying them back, made clear that she intended, from the date she entered into the lease onward, to keep Sauter out of the house without paying back the money. This was a credibility determination that the court had full authority to make, and it was not "so contrary to the evidence as to shock one's sense of justice." *Sullivan*, 820 A.2d at 806.

Finally, Foreman, the third complainant, testified that she entered into a lease with defendant on October 19, 2009 and paid her $1,500 in two installments before the end of the month. Throughout November and December, defendant kept pushing back the move-in date with a series of excuses. At one point, defendant promised to leave a key for Foreman under the flower pot but failed to do so. Tr., p. 78. The room was not available on December 7. Tr., pp. 70-72. At that point, Foreman cancelled the lease and demanded her money back. Shortly before cancellation, defendant suggested that Foreman rent another room in the house, but Foreman found the room unsatisfactory because there was a strong cat odor and it was a walk-through room that compromised her privacy. Tr., pp. 63-72. Despite Foreman's efforts to obtain repayment, defendant failed to pay Foreman back until the day before the preliminary hearing.

Defendant claimed that she gave Foreman a key in timely fashion. Tr., p. 113. She insisted that she was not to blame for any delays in Foreman's move; the fault lay with another roommate, Amanda, who kept delaying in moving out. Tr., pp. 110-12. Finally, she claimed that the room Foreman wanted was available by December 7, 2009, but Foreman no longer wanted to move in and demanded her money back. Tr., p. 114. Once again, having observed Foreman's and defendant's demeanor and carefully weighed the evidence, the court finds Foreman believable and defendant less than credible. And once again, the court had full discretion to make this determination.

Issues 7-8. Defendant raises two virtually identical

claims: first, that the court "erroneously held witness's ability to understand contract not relevant to their breaches of contract, which negated criminal intent and rendered this a civil dispute," and the court "erroneously disregarded the witnesses' breaches of contract and changes of mind, which should have made this a civil matter." These boil down to the same claim as in issue 2, viz., the court should have accepted defendant's version of events and rejected the complainants' testimony. For the reasons provided above, the court rejects these arguments. Furthermore, this case concerns defendant's intent, not the complainants'. The court determined that defendant's intent was criminal; accordingly, it rejects defendant's attempt to downplay this as a "civil dispute."

Issue 9. Defendant contends that the court erred "when it disregarded the defendant's inability to return deposits because of [the] illegal preference rule of Bankruptcy court." The court addressed this argument above on pages 15-16 and finds it meritless.

C. *Defendant's objections to evidentiary rulings (Issues 4-6) are devoid of substance.*

In Issue 4 of her concise statement, defendant states that the court erroneously permitted inadmissible hearsay testimony from commonwealth witnesses. Defendant has waived this issue by failing to specify the alleged inadmissible hearsay. Pa.R.A.P. 1925(b)(iv, vii); *Commonwealth v. Allshouse*, 969 A.2d 1236, 1239 (Pa. Super. 2009) (citing *Commonwealth v. Thompson,* 778 A.2d 1215, 1223 (Pa. Super. 2001), *appeal denied,*

567 Pa. 725, 786 A.2d 988 (2001)) ("when a court has to guess what issues an appellant is appealing, that is not enough for meaningful review").

In any event, this objection does not warrant relief. There was only one hearsay objection by defense counsel that the court overruled. The commonwealth asked Detective Christake about "the nature of the complaints that you received." Tr., p. 84. He responded, over objection, that he was investigating "fraudulent activity at [defendant's] address, scams going on on Craigslist." Tr., p. 84. The commonwealth did not offer this testimony for its truth but to show the effect of the complaints on the detective's course of conduct. An out-of-court statement offered not for its truth but to explain the witness's course of conduct is not hearsay. *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749, 754 (1987) (where police officer related contents of radio call that prompted his trip to crime scene, such testimony was not hearsay because it was introduced solely to explain how the officer came to be at the scene).

In Issue 5, defendant argues that the court erroneously admitted evidence of "other bad acts." defendant has waived this issue by failing to specify the alleged bad acts. Pa.R.A.P. 1925(b)(iv, vii); *Allshouse*, supra. Furthermore, assuming that defendant is referring to evidence obtained from defendant on cross-examination concerning her rental transactions with Stevenson, Phillips, and Murray, defendant waived this issue by failing to make any objection during trial. *Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 740 (2004) (failure to

lodge timely objection to testimony waives any challenge to that testimony on appeal). Finally, these transactions were admissible under Pa.R.E. 404(b) to demonstrate defendant's motive and intent.

In Issue 6, defendant complains that the court erroneously sustained multiple objections concerning her efforts to return money to the complainants. Defendant has waived this issue by failing to specify the objections that the court sustained. Pa.R.A.P. 1925(b)(iv, vii); *Allshouse*, supra. In any event, the court permitted evidence that defendant paid Etzler a $100 money order and repaid Foreman in full. Tr., pp. 28, 81.

D. *Defendant's challenge to her sentence is devoid of merit.*

Finally, defendant argues that her sentence of 10 days to 23 months imprisonment is excessive and unreasonable. Theft by deception is a first degree misdemeanor punishable by up to five years imprisonment. 18 Pa.C.S. § 1104. This sentence is well within the maximum period of confinement. It also falls within the standard range of the Sentencing Guidelines, which recommend up to a minimum of one month imprisonment for defendants with no prior offenses and an offense gravity score of 3. N.T., 9/7/10, p. 3 (sentencing hearing). Therefore, defendant's sentence is entirely reasonable.

## CONCLUSION

For the foregoing reasons, defendant's judgment of sentence should be affirmed.