J-S71038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANNY JERALD ALDERMAN | |
| Appellant | No. 830 WDA 2015 |

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000642-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 09, 2016**

Danny Jerald Alderman appeals *pro se* from the judgment of sentence imposed on April 30, 2015, in the Court of Common Pleas of Somerset County.  On January 16, 2015, a jury convicted Alderman of driving under the influence ("DUI").[1]  That same day, the trial court, sitting without a jury, convicted him of driving on roadways laned for traffic and careless driving.[2] The court sentenced Alderman to a term of 12 months to five years in a state correctional facility with respect to the Section 3802(c) DUI offense.[3] On appeal, Alderman challenges the sufficiency of the evidence.  After a

_____

[1]  75 Pa.C.S. § 3802(c).

[2]  75 Pa.C.S. §§ 3309(1) and 3714(a).

[3]  The court imposed statutory fines and costs for the remaining offenses.

thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court summarized the evidence presented at trial as follows:

The Commonwealth's first witness, Carol Fochtman, testified on direct examination that on April 26, 2014, she was driving on her way home from work and encountered a vehicle in front of her driving very slowly at approximately 10 to 15 miles an hour in a 35 miles per hour zone. She stated that the vehicle "swerved off to the right on the berm just a little bit … it happened again, like a couple seconds later it went off on the berm again to the right." She also testified "… I said it out loud to myself, I said, 'Oh, my God, he's going to hit that pole.' And it was like a couple of seconds later, I heard a crack and he hit the pole." Ms. Fochtman stated that she got out of her car and went over to the driver who was out of the car and standing up. She stated "I said, 'Are you okay? He said, "Yes." Ms. Fochtman was then asked "What else did he say to you?" She answered that he said "Please don't call the cops." She also testified that she did not see him drink anything. In addition, she was able to point to [Alderman] as the man she saw at the scene.

The Commonwealth also called Mary Devroy, another driver who came upon the scene and stopped. She testified as follows:

Driving out Route 160 towards Windber, we seen a car that was off the road that hit a telephone pole. We pulled off to the right. As I was walking across the road calling 911 to report an accident, [Alderman] was sitting on the ground, went over to make sure he was okay, and I could smell the alcohol. And I said: "were you drinking?" and he did admit, yes, that he was drinking.[]

She also testified that she made the call to 911 at 5:54 P.M. and that she saw an open beer can in [Alderman]'s car. Further, she stated that she smelled the alcohol on [Alderman] before he climbed back into his car. In addition she said that [Alderman] said "Please don't call the police … I am going to go to jail." She testified that the State Police Trooper arrived at 6:20 and she left the scene at 6:21.

Trooper Eric Bowser testified regarding his investigation of the accident. He stated that he was dispatched at 6:00 P.M. and arrived at the scene about 20 to 25 minutes after the accident had occurred. He stated that he viewed the damage to the car and the pole and that an ambulance was preparing to transport the operator to the hospital. He gathered s[o]me additional evidence, talked to Ms. Devroy, prepared a diagram of the scene, travelled to Windber Hospital and spoke to [Alderman] there, noting "a very strong odor of alcohol emanating from … Mr. Alderman." The Trooper also testified that [Alderman]'s "eyes were glassy and bloodshot … he had slurred speech; he was sleepy and groggy as well as crying…" [Alderman] also stated that he had three or four beers in the morning. After [Alderman] also failed a field sobriety test, identified as a horizontal gaze nystagmus test, Trooper Bowser placed him under arrest for driving under the influence at approximately 6:56 P.M. At 7:08 P.M. a blood sample was drawn by hospital personnel for testing at the request of the Trooper. In addition, Trooper Bowser testified that he had found one beer can in [Alderman]'s vehicle at the scene.

Finally, the Commonwealth presented the testimony of Karen Turcato, an employee in the laboratory at Windber Hospital where [Alderman] was taken for treatment. She testified concerning her role in the taking and chemical testing of a sample of [Alderman]'s blood on the evening in question. She reviewed the procedure she employed and the test result which showed a blood alcohol of .243%. The test results were admitted as Commonwealth's Exhibit "A" without objection. She verified that the time of the blood draw at 7:08 P.M. on April 26, 2014. After the Commonwealth rested, we denied a Defense motion for Judgment of Acquittal.

[Alderman] presented testimony from his mother and also took the stand. Sherri Miller testified that [Alderman] had spent the night at her home and spent time with his daughter there. She said that [Alderman] wanted to take the child fishing but the child wouldn't go unless her grandfather went along. She stated that he left the house and was upset regarding the failed fishing outing. In addition she stated that [Alderman] had nothing alcoholic to drink at her home. On cross examination she stated that [Alderman] was gone 30-45 minutes before she received a call from him regarding his accident.

[Alderman] testified regarding his plans to take his daughter fishing on his day off and the issue that arose which frustrated those plans. He stated that he began to feel "overwhelmed" by the circumstances and wanted to avoid getting frustrated in the child's presence and chose to leave the house. He stated that he drove to a gas station, got gas in his vehicle, purchased some cigarettes, sat in his vehicle and smoked a cigarette and left the area. He explained that the vehicle was experiencing some problems with the alignment and the vehicle was "pulling" to the right. He stated that as he pulled out, his phone slid off the seat, he picked it up and was looking at [it] when the vehicle "just pulled off the road. I wasn't paying attention and it hit the pole."

He stated that he had not been drinking at home, was not drinking at the gas station, and had no alcohol in his system when he hit the pole. He testified that there was alcohol in the car "some beer in the back seat … I had a fifth of Jim Beam under the passenger seat." He also testified that he "opened the beer – or I washed my mouth, spit it out and drank the beer. I opened the fifth and figured I would drink as much of it as I can until the police got there."

On cross-examination, [Alderman] was asked

"So you're willing – you were willing to say anything to get home at that time?"

That inquiry produced the following exchange:

"A. After I realized I wasn't going to jail that day, I mean yeah. I had alcohol on my breath. I – I can't deny it. I was looking for what is the most plausible explanation –

Q. Kind of like you're doing today. You're looking for the most plausible explanation –

A. That is your opinion. I can't argue with you.

Q. So you didn't – you lied to the officer when you said you had three or four drinks that morning?

A. Yeah.["]

Trial Court Opinion, 7/2/2015, at 2-6 (record citations omitted).

As noted above, a one-day jury was held on January 16, 2015. The jury convicted Alderman of DUI, a first-degree misdemeanor. Following the jury trial, the trial court convicted him of the summary offenses of driving on roadways laned for traffic and careless driving. As noted above, on April 30, 2015, the court sentenced Alderman to a term of 12 months to five years in a state correctional facility with respect to the Section 3802(c) DUI offense. Following the sentencing hearing, by separate order, the court granted Alderman's oral motion to dismiss his appointed counsel and to proceed to represent himself on appeal.

On May 6, 2015, Alderman filed a motion for reconsideration seeking a reduction in the maximum date of his incarceration. However, on May 22, 2015, before argument could be scheduled regarding the motion, Alderman filed a notice of appeal. On June 2, 2015, the trial court entered an order, denying his post-sentence motion. On June 3, 2015, the trial court ordered Alderman to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Alderman filed a concise statement on June 17, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 2, 2015.

In Alderman's sole argument,[4] he claims there was insufficient evidence to support his conviction for DUI under Section 3802(c). Specifically, he states expert testimony was required to validate the blood alcohol content ("BAC") testing because a supernatant example was used as the test sample of his results and therefore, evidence of a conversion factor to calculate the whole blood alcohol content of the original whole blood sample from the non-whole blood result was necessary. Alderman's Brief at 9-13. Moreover, he states that while the Commonwealth may have mentioned "conversion" while questioning Karen Turcato, the Windber Medical Center laboratory employee, it did not present any evidence of the conversion process. *Id.* at 11. He asserts:

> This makes the result of the test legally insufficient to support a conviction for [Section] 3802(c), Merely stating this is the whole blood conversion, without explanation or conversion factors used, is tantamount to simply stating that someone is an expert, but not showing you their credentials.

*Id.* In support of his argument, he relies on ***Commonwealth v. Haight***, 50 A.3d 137 (Pa. Super. 2012), and ***Commonwealth v. Karns***, 50 A.3d 158 (Pa. Super. 2012).

Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

_____

[4] We note that while Alderman lists two issues in his statement of questions involved, he addresses them together in his argument.

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa. Super. 2011),

*quoting* *Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa. Super.

2010).

However, before we may address the merits of this issue, we must

determine whether Alderman properly preserved the claim. In his concise

statement, as ordered by the court to file, Alderman identified the following

issues he wished to raise on appeal:

1) Whether there was sufficient evidence presented to the Jury for them to return a verdict that [Alderman] was driving with a BAC of .16 or higher?

2) Whether the verdict was against the weight of the evidence presented to uphold a verdict that [Alderman] was at the time of the operation of the vehicle , operating a vehicle with a BAC[] of .16% or higher?

Concise Statement of Matters Complained on Appeal, 6/17/2015, at 2.

The trial court found Alderman's issues on appeal could be waived, determining his concise statement failed to specify any specific errors the court made during trial. *See* Trial Court Opinion, 7/2/2015, at 6. The trial court stated, "We view these statements as the type of 'boilerplate' responses which may not require a response under Rule 1925." *Id.* Nevertheless, the court did address the sufficiency and weight claims generally but did not specifically analyze the sufficiency of expert evidence regarding the conversion process for the BAC results. *See id.* at 2-8.

Rule 1925 requires an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues[.]" Pa.R.A.P. 1925(b)(4)(ii). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Allshouse*, 969 A.2d 1236, 1239 (Pa. Super. 2009) (failure to adequately identify issues "impede[s]" trial court "in its preparation of a legal analysis which is pertinent to those issues.").

Ordinarily, a defendant waives a sufficiency claim where he fails to indicate with specificity which element of a crime the Commonwealth failed to prove. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.").

The trial court convicted Alderman of DUI, highest rate of alcohol, under the following statute:

**§ 3802. Driving under influence of alcohol or controlled substance**

…

**(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

Based on the lack of specificity regarding what element of the crime the Commonwealth failed to establish, we are compelled to conclude Alderman waived his claim by filing a deficient concise statement.[5]

Judgment of sentence affirmed.

_____

[5]  Moreover, the test results were admitted without objection.  **See** N.T., 1/16/2015, at 47.  Additionally, prior to sentencing, Alderman's counsel made an oral motion for arrest of judgment, relying on **Commonwealth v. Kostra**, 502 A.2d 1287 (Pa. Super. 1985), and stating that **Kostra** discusses "blood alcohol conte[n]t, lay testimony and expert testimony.  We believe there was no expert testimony presented and that that would disqualify essentially the Jury's lay opinion of what his blood alcohol could have been or would have been at the time."  N.T., 4/30/2015, at 4-5.  The court denied the motion without prejudice to raise on appeal.  However, as evidenced above, Alderman did not set forth the sufficiency argument with any specificity as required by the appellate rules.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/9/2016