J-A19038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ANDREW NESMITH JR. | |
| Appellant | No. 1481 EDA 2015 |

Appeal from the Judgment of Sentence May 13, 2015
in the Court of Common Pleas of Lehigh County Criminal Division
at No(s): CP-39-CR-0003032-1997

BEFORE: FORD ELLIOTT, P.J.E., OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 31, 2017**

Appellant, Andrew Nesmith Jr., appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas revoking his parole and sentencing him to serve his remaining backtime. Appellant argues, *inter alia*, that the fifteen-year delay in holding his parole revocation hearing violated his right to a speedy revocation hearing. We agree with Appellant and reverse the judgment of sentence.

On January 26, 1998, Appellant pleaded guilty to retail theft. On March 18, 1998, the trial court sentenced Appellant to six to twenty-three months' imprisonment. The record does not indicate the date Appellant was released from prison on parole.

---

[*] Former Justice specially assigned to the Superior Court.

On September 14, 1999, the trial court found that Appellant violated his parole but immediately reparoled him. Order, 9/14/99. The trial court permitted Appellant to transfer his parole supervision to Philadelphia County, where he lived. *Id.*

On June 23, 2000, the Lehigh County Probation and Parole Department filed a petition to revoke Appellant's parole. Pet. to Revoke Parole, 6/23/00. On the same date, the trial court issued a bench warrant for Appellant's arrest. *Id.*

On August 21, 2000, Appellant was arrested on the warrant. On the same date, Appellant signed a "Waiver of Preliminary Hearing (*Gagnon I*[1])" and listed his address as 2918 North Lambert Street in Philadelphia along with his telephone number. Waiver of Prelim. H'rg, 8/21/00. On the waiver form, Appellant acknowledged receipt of a parole violation petition and consented "to be bound over to Court for the final revocation hearing (*Gagnon II*[2])." *Id.* The waiver form, however, did not list the date of the *Gagnon II* hearing. *Id.* Appellant was released on bail on August 22, 2000.

The trial court scheduled Appellant's *Gagnon II* hearing for September 12, 2000. On September 12, 2000, Appellant did not appear, and the trial court issued a bench warrant for his arrest. On the same date,

---

[1] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[2] *See id.*

- 2 -

the Clerk of Courts sent a certified letter to Appellant's North Lambert Street address advising that the trial court had issued a bench warrant for his arrest. The post office delivered the certified letter on September 14, 2000 with receipt acknowledged by one Gladys Nesmith.

On April 15, 2015, law enforcement authorities took Appellant into custody on the September 12, 2000 bench warrant.

On May 12, 2015, Appellant appeared in the trial court for a *Gagnon II* hearing based on his alleged failure to report to his parole officer in Philadelphia during March through mid-May of 2000, fifteen years earlier.[3] The Commonwealth presented the testimony of Elizabeth Duncan, a Lehigh County parole officer, who was not involved in Appellant's supervision in 2000 or at any other time. Over Appellant's hearsay objection, Duncan read from a letter allegedly written by the Philadelphia parole officer on May 17, 2000, which stated that the Philadelphia parole officer sent Appellant's case back to Lehigh County due to Appellant's failure to report from March 2000 through mid-May 2000. N.T., 5/12/15, at 12-17. The Commonwealth did not move the Philadelphia parole officer's May 17, 2000 letter into evidence.

---

[3] The record does not indicate how much time remained on Appellant's parole as of September 14, 1999, the date of his first revocation hearing. For purposes of this memorandum, we will assume that Appellant remained on parole from March through mid-May 2000, the time period he allegedly failed to report to his Philadelphia parole officer.

Nor did the Commonwealth call a member of the Philadelphia County Probation and Parole Office to testify.

According to Duncan, on June 2, 2000, the Lehigh County Probation Office sent regular and certified letters to Appellant's last known address, 2918 North Lambert Street in Philadelphia. *Id.* at 13, 15-16. Appellant allegedly did not respond to the letters. *Id.* On June 16, 2000, the Lehigh County Probation Office attempted to telephone Appellant at his North Lambert Street address, but Appellant did not answer. *Id.* at 16.

Counsel for Appellant argued that Appellant did not have any notice of the September 12, 2000 hearing. *Id.* at 4. According to counsel, notice of this hearing only occurred **after** the trial court issued the bench warrant for Appellant's arrest, and the notice did not reach Appellant because another person, Gladys Nesmith, signed for its receipt. *Id.* The Commonwealth responded that it had a "file copy" of a letter it sent to Appellant's North Lambert Street address on August 29, 2000 notifying Appellant of the final revocation hearing on September 12, 2000. *Id.* at 4-5. The Commonwealth did not move the August 29, 2000 letter into evidence.

For almost fifteen years after sending the September 12, 2000 letter, the Commonwealth made no effort to contact Appellant. *Id.* at 16.

Appellant testified that between 2000 and 2015, he was imprisoned in Pennsylvania state prison, New Jersey state prison, Montgomery County prison and Bucks County prison. *Id.* at 19-21. Appellant did not testify how

long he was incarcerated in each of these institutions. Appellant also claimed that he "resolved" bench warrants from Lancaster, Carlisle, and Cumberland Counties but never knew of any bench warrant from Lehigh County. *Id.* at 21-22.

Following the hearing, the trial court held that the Commonwealth sent notice of the September 12, 2000 hearing to Appellant on August 29, 2000. Trial Ct. Op., 7/16/15, at 3. The court further held that Appellant violated his parole by failing to report; it thus revoked Appellant's parole and ordered him to serve the balance of his sentence. *Id.* at 4. With respect to the fifteen-year delay, the trial court concluded that Appellant concealed his whereabouts from his parole officer, and therefore the delay in his *Gagnon II* hearing was reasonable. *Id.* at 4, 7.

On May 19, 2015, Appellant timely appealed the order revoking his parole. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises four issues in this appeal, which we have re-ordered for purposes of disposition:

> 1. Whether [Appellant's] right to a speedy violation hearing was violated due to the [fifteen] year delay between the alleged violation of parole and in the occurrence of the *Gagnon II* hearing, where [Appellant] was incarcerated and available to the Commonwealth on multiple occasions during the intervening years, and suffered prejudice as a result of the delay[?]
>
> 2. Whether the Commonwealth violated [Appellant's] Due Process Rights and Pennsylvania Rule of Criminal Procedure 708 by failing to show proof of proper notice to

the Defendant of the original *Gagnon II* Hearing, or by timely scheduling such a hearing[?]

3. Whether the [c]ourt erred in allowing unreliable hearsay testimony to be admitted from a Lehigh County Probation Officer, who relayed to the [c]ourt the notes of a Philadelphia County Probation Officer[?]

4. Whether the [c]ourt erred in determining that a violation of parole occurred on the basis of 'whereabouts unknown,' where there was insufficient evidence to prove that [Appellant] willfully concealed his whereabouts, or that [Appellant] was aware of the scheduling of the original *Gagnon II* Hearing[?]

Appellant's Brief at 2-3.

In his first issue, which we find dispositive, Appellant argues that his sentence should be vacated due to a violation of his right to a speedy revocation hearing. Specifically, Appellant maintains that (1) the fifteen-year delay between Appellant's alleged parole violation and his revocation hearing was unreasonable; (2) the Commonwealth failed to act with due diligence in scheduling his revocation hearing; and (3) Appellant suffered prejudice from this delay. Relief is due.

"When reviewing the results of a revocation hearing, this Court is limited to determining the validity of those proceedings, and the legality of the judgment of sentence imposed." *Commonwealth v. Williams*, 801 A.2d 584, 585 (Pa. Super. 2002) (citation omitted).

The Rules of Criminal Procedure provide in relevant part:

**(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate

- 6 -

punishment, or parole as allowed by law unless there has been:

> (1) **a hearing held as speedily as possible at which the defendant is present and represented by counsel**; and
>
> (2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B) (emphasis added). This Court has observed:

> The language '[as] speedily as possible' has been interpreted to require a hearing within a reasonable time. **Commonwealth v. Saunders**, [575 A.2d 936, 938 (Pa. Super. 1990)]. Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay. **Commonwealth v. McCain**, [467 A.2d 382, 383 (Pa. Super. 1983)]. The relevant period of delay is calculated from the date of conviction or entry of guilty plea to the date of the violation hearing. **Id.**
>
> In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay. **Saunders, supra**. The court must analyze the circumstances surrounding the delay to determine if the Commonwealth acted with diligence in scheduling the revocation hearing. **Commonwealth v. Bischof**, [616 A.2d 6, 8 (Pa. Super. 1992)]. Prejudice in this context compromises the loss of essential witnesses or evidence, the absence of which would obfuscate the determination of whether probation was violated, or unnecessary restraint of personal liberty. **Commonwealth v. Marchesano**, [544 A.2d 1333, 1336 (Pa. 1988)].

**Commonwealth v. Clark**, 847 A.2d 122, 123-24 (Pa. Super. 2004).

We analyze the length of the delay in holding Appellant's **Gagnon II** hearing, the reasonableness of the delay and the prejudice from the delay *seriatim*. **See id.**

First, the trial court correctly concluded that the length of the delay was "extraordinary." Trial Ct. Op. at 7. A brief review of parole revocation procedure will place this delay in perspective. When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a **Gagnon I** hearing, that probable cause exists to believe that a violation has been committed. **Commonwealth v. Ferguson**, 761 A.2d 613, 617 (Pa. Super. 2000) (citation omitted). Where the court finds probable cause, the court must hold a second, more comprehensive hearing known as a **Gagnon II** hearing, before making its final revocation decision. **Commonwealth v. DeLuca**, 418 A.2d 669, 672 (Pa. Super. 1980). The **Gagnon II** hearing entails two decisions: first, a "consideration of whether the facts determined warrant revocation." **Morrissey v. Brewer**, 408 U.S. 471, 488 (1972). "The first step in a [**Gagnon II**] revocation decision . . . involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." **Gagnon**, 411 U.S. at 784 (citation omitted). The Commonwealth must demonstrate this fact by evidence containing "probative value." **Commonwealth v. Kates**, 305 A.2d 701, 710 (Pa. 1973). "Only if it is determined that the parolee did violate the

conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Gagnon*, 411 U.S. at 784 (citation omitted). The *Gagnon II* hearing affords the parolee greater due process safeguards than the *Gagnon I* hearing, specifically:

> (a) written notice of the claimed violations of . . . parole; (b) disclosure to the . . . parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking . . . parole.

*Ferguson*, 761 A.2d at 617-18 (citations omitted). "[H]earsay is not admissible at a *Gagnon II* hearing absent a finding of good cause for not allowing confrontation." *Commonwealth v. Allshouse*, 969 A.2d 1236, 1241 (Pa. Super. 2009) (citation omitted).

This Court has articulated several methods for measuring the length of the delay in holding a *Gagnon II* hearing. *See Bischof*, 616 A.2d at 8 (measure of delay extends from defendant's date of conviction or entry of guilty plea on new charges to date of revocation hearing); *Commonwealth v. Gochenaur*, 480 A.2d 307, 310 (Pa. Super. 1984) (revocation hearing must be held with reasonable promptness after probation officer is chargeable with knowledge that parole has been violated); *Commonwealth*

*v. Dorsey*, 476 A.2d 1308, 1310 (Pa. Super. 1984) (relevant period is length of time between custody of parolee under valid warrant and revocation hearing).

We have held in multiple cases that delays of one or more years between the parole or probation violation and the revocation hearing are unreasonable. *See, e.g., Commonwealth v. Wright*, 116 A.3d 133, 138 (Pa. Super. 2015) (delay of four years unreasonable); *Bischof*, 616 A.2d at 8 (delay of almost two years unreasonable); *McCain*, 467 A.2d at 397 (twelve month delay unreasonable).

The fifteen-year delay in this case between Appellant's alleged parole violation and the revocation hearing was far longer than the delays held unreasonable in the foregoing cases. Therefore, this factor weighs against the Commonwealth.

Next, the trial court held that the Commonwealth exercised due diligence because Appellant caused the fifteen-year delay by concealing himself from his parole officer. Trial Ct. Op. at 7. We are constrained to disagree.

We must analyze "the circumstances surrounding the . . . delay to [determine] if the Commonwealth acted with diligence in scheduling the revocation hearing." *Bischof*, 616 A.2d at 8. "[W]here the Commonwealth provides no explanation for the delay, the court should not attribute the

delay to the defendant." ***Commonwealth v. Christmas***, 995 A.2d 1259, 1263 (Pa. Super. 2010) (citation omitted).

Here, the Commonwealth failed to provide any admissible evidence to explain the fifteen-year delay between Appellant's alleged parole violation and his revocation hearing. There was no admissible evidence that Appellant failed to report to his Philadelphia parole officer in 2000, because (1) the Commonwealth did not introduce the alleged May 17, 2000 letter from the Philadelphia parole officer into evidence, and (2) Duncan's testimony concerning the content of the letter was inadmissible both on grounds of hearsay and lack of authentication. ***See*** Pa.R.E. 801(c) (defining hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"); Pa.R.E. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").

The Commonwealth also failed to demonstrate that it served Appellant with the August 29, 2000 letter providing notice of the September 12, 2000 revocation hearing, because the Commonwealth failed to introduce the August 29, 2000 letter into evidence or prove that it was served on Appellant. To the contrary, the evidence indicates that another person, Gladys Nesmith, received the letter.

Further, there is no evidence that Appellant fled, evaded arrest or concealed his location at any time. To the contrary, Appellant gave unrebutted testimony that he was in custody in various prisons between 2000 and 2015. He was thus fully available for a revocation hearing during some, and perhaps most, of the fifteen-year time period. The record thus reflects that the Commonwealth failed to act with due diligence in pursuing revocation of Appellant's parole.

Finally, the trial court determined that Appellant failed to demonstrate prejudice as a result of the fifteen-year delay, because "the allegation on which [A]ppellant was found to have violated his parole was 'whereabouts unknown,' [and] there was no showing that defense witnesses were needed or, if needed, were unavailable to rebut the evidence of whereabouts unknown." Trial Ct. Op. at 7. We again are constrained to disagree.

Where the Commonwealth fails to act with due diligence, we must examine whether the delay prejudiced the defendant. *Wright*, 116 A.3d at 138-39. "The primary purpose of requiring a prompt revocation hearing is to prevent the loss of essential witnesses or documentary evidence and the continuance of unnecessary incarceration or other limitations on personal liberty." *Commonwealth v. Jones*, 378 A.2d 481, 483 (Pa. Super. 1977). A presumption of prejudice arises when the probationary period expires before a revocation hearing is held. *Wright*, 116 A.3d at 138-39 ("[a]ppellant was presumptively prejudiced" by delay in revocation hearing

"since it occurred two and one-half years after her probation was over");

***Commonwealth v. Stancil***, 524 A.2d 505, 507 (Pa. Super. 1987) (defendant was prejudiced by delay in revoking his probation for failing to make restitution to assault victim, where revocation hearing was held three years after expiration of probationary term).

Here, in March 1998, Appellant was sentenced to 6-23 months' imprisonment. In September 1999, the trial court revoked his parole. Presumably, he remained on parole from March through mid-May 2000, when he allegedly failed to report to his Philadelphia parole officer. Holding Appellant's ***Gagnon II*** hearing in May 2015, some fifteen years after his parole ended, was "presumptively prejudic[ial]." ***Wright***, 116 A.3d at 139.

It is also evident that this delay prejudiced Appellant by causing a violation of his confrontation rights. As discussed above, during Appellant's ***Gagnon II*** hearing, the Commonwealth did not present Appellant's Philadelphia parole officer who monitored his case in 2000. Instead, the Commonwealth presented a Lehigh County parole officer who purported to read from a May 17, 2000 letter from a Philadelphia parole officer alleging Appellant's failure to report from March 1, 2000 onward. The trial court failed to explain why good cause existed for a Lehigh County parole officer to establish Appellant's parole violation by reading hearsay from a Philadelphia County parole officer's alleged letter instead of presenting the Philadelphia County officer's live testimony. ***See Allshouse***, 969 A.2d at 1241 (hearsay

- 13 -

inadmissible at **Gagnon II** hearing absent a finding of good cause); **Ferguson**, 761 A.2d at 617 (same). Nor did the Commonwealth present any reason for failing to procure the testimony of Appellant's Philadelphia parole officer. It seems reasonable to infer that this parole officer was no longer available to testify due to the passage of time—and if this is so, the fault lies with the Commonwealth for failing to prosecute Appellant with due diligence. The Commonwealth's inaction deprived Appellant of his right to confront the Philadelphia parole officer and left him the impossible task of cross-examining a fifteen-year-old piece of paper. **See Allshouse**, 969 A.2d at 1241-42 (where parolee was accused of violating no-contact order with female victim, letter from victim's mother and police report concerning altercation between victim and defendant were inadmissible hearsay absent finding of good cause for not allowing confrontation; error was not harmless, because without hearsay, there was no admissible evidence that defendant willfully violated no-contact order).

To repeat, we hold that the fifteen year delay in Appellant's **Gagnon II** hearing was unreasonably long; the delay resulted from the Commonwealth's lack of due diligence; and the delay prejudiced Appellant. We cannot cure this prejudice by ordering another **Gagnon II** hearing,

because it would take place even later in time than the May 2015 hearing.

Accordingly, we reverse Appellant's judgment of sentence.[4]

Judgment of sentence reversed. Jurisdiction relinquished.[5]

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2017

---

[4] Because this issue is dispositive, we see no need to address Appellant's remaining issues in this appeal.

[5] Appellant requests that we order the time served on his present sentence applied toward any other matter for which he is currently incarcerated. We deny this request without prejudice to Appellant's right to request this relief in any other case(s) in which he is serving a sentence. **See, e.g.**, 42 Pa.C.S. § 9760 (addressing credit for time served).