J-A03029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY BEST | : | |
| | : | |
| Appellant | : | No. 916 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 21, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002796-2018

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED JUNE 29, 2023**

Jeffrey Best ("Best") appeals from the judgment of sentence imposed following a non-jury trial at which the trial court found him guilty of rape and related offenses.[1]  We affirm in part, vacate in part, and remand for a new hearing to determine whether Best is a sexually violent predator ("SVP").

The trial court summarized the trial evidence as follows:

> At approximately 11 P.M. on June 2, 2013, in the Northern section of Philadelphia near the intersection of Old York Road and Rising Sun Avenue, [Best] approached [D.C. ("Complainant")] and propositioned her for sex.  During this time, [D.C.] was working as a prostitute to support her drug and alcohol addiction.  She had never seen nor interacted with [Best] before.  She noted that he had a limp.  [Best] offered her $20 and they proceeded to the side of an abandoned house together.  [Best] suggested they go to the back of the house and, despite her reluctance, [D.C.] agreed. [*See*] N.T., 7/13/21 at 12-16.

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 3124.1, 907, 2706(a)(1).

[D.C.] testified that [Best] pressed a hard object against her back and told her he was going to "blow [her] brains out." He told her to take off all her clothes and [D.C.] complied. [Best] forced her to go further back behind the abandoned house. *Id*. at 14. [Best] forced [D.C.] to lay on her back and have vaginal and anal sex with him. He continued to repeat that he would blow her brains out if she said anything. [Best] forced [D.C.] to turn around and get on her knees. He then forcibly had anal sex with [D.C.]. After this, [Best] forced [D.C.] to give him oral sex. The entire interaction lasted for, what [D.C.] described as, "a while." After he was done, [Best] put his clothes on and ran away. *Id*. at 16.

[D.C.] put on her clothes and ran nearly twenty blocks down Broad Street until she saw an ambulance and told EMTs that she had been raped. The ambulance took her to Episcopal Hospital where she received treatment for her injuries and a rape kit was administered. [D.C.] sustained scarring on her knees from the incident. At trial, [D.C.] showed her knee scarring to the trial court, which was still noticeable. At the hospital, she told the nurses and doctors that she was raped. She also was interviewed by a detective at the hospital. *Id*. at 26-29.

In 2018, while [D.C.] was in a rehabilitation facility, she was contacted by detectives who stated that they had a DNA match for her rapist. *Id*. at 30-31. Detective Manuel Gonzalez, assigned to the Special Victim's [sic] Unit ("SVU"), first became involved with this case in 2018 when he received a "hit" from the national DNA database. [Best] voluntarily gave a DNA swab to detectives at some point. This DNA sample from [Best] matched DNA from the swabs taken at the hospital from [D.C.'s] body on the night of June 2, 2013. [Best's] DNA was identified as a "major component" in the DNA mixture from the rape kit. *Id*. at 58-60, 88-89.

Detective Gonzalez interviewed [D.C.] shortly after the DNA match, showing her the interview she did with Detective McGoldrick in 2013 and confirming that the details from that interview were correct. The following day, Detective Gonzalez did a follow up interview with [D.C.] for additional details. His partner, Detective Enriquez,[2] showed [D.C.] a photo array where

---

[2] The record does not indicate Detective Enriquez's first name.

she identified [Best]. *Id*. at 60-72. [3]  Detective Gonzalez then interviewed and obtained a signed statement from [Best].  Shortly after, [Best] was arrested. *Id*. at 73-74.

[Best] testified that he has had cerebral palsy his whole life, he walks with the assistance of a cane, and has limited use of his left side. *Id*. at 93.  He confirmed that he propositioned [D.C.] for sex, [initially telling her that he had $20 dollars]. *Id*. at 95. [Best] confirmed that they had sex outside of the abandoned building but testified that during the exchange there were multiple disputes over the manner of sex and the amount of money he was to pay her. *Id*. 95-105.[4]  [Best] claimed that at no point did he force [D.C.] to have sex with him. *Id.* at 114.  He argued that his disability would prevent him from committing this crime. *Id*. at 131.

Trial Court Opinion, 6/8/22, at 1-3.  The trial court, at the non-jury trial, found Best guilty of the above-stated offenses and ordered an assessment by the Sexual Offender Assessment Board ("SOAB"). *See* 42 Pa.C.S.A. § 9799.24(a).[5]

On March 21, 2022, the trial court held an SVP and sentencing hearing, at which the Commonwealth marked as Exhibit C-1, a SOAB report authored

---

[3] During trial, Best's counsel impeached D.C. using inconsistencies between her 2013 and 2018 reports to SVU detectives, as well as her failures to disclose that she was a prostitute, had drug issues, had used drugs and alcohol before she encountered Best in 2013, and had previously reported to police that she had been sexually assaulted. *See* N.T., 7/31/21, at 76-78.

[4] Best testified at trial that while he was engaging in intercourse with D.C., she repeatedly asked for five more dollars and when he ejaculated inside of her, she demanded an additional fifteen dollars. *See* N.T., 7/31/21, at 105.

[5] Because Best's convictions in the present case arise from offenses committed in 2013, Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA") applies. *See* 42 Pa.C.S.A. § 9799.11(c) (noting that Subchapter H of the current version of SORNA applies to individuals convicted of sexually violent offenses committed on or after December 20, 2012).

by Steven Pflugfelder. **See** N.T., 3/21/22, at 19, 23.[6] The trial court asked the Commonwealth to discuss the results of the SOAB report, and the Commonwealth highlighted that: (1) the evaluator considered Best's criminal history, which includes five other arrests involving allegations of sexual offenses but did not result in convictions; (2) Best's other arrests, and the present convictions, involve a pattern, *i.e.*, Best approached a stranger, used a weapon, and forcibly compelled sex; (3) the assault of D.C. lasted for hours and involved several sexual acts; and (4) Best's criminal history involves multiple victims because his other arrests involve separate victims. **See** N.T., 3/21/22, at 19-22. The Commonwealth then stated the evaluator's conclusion as follows:

> [H]aving reviewed all of the records available, having considered all of the factors specified under Pennsylvania law, and having considered the current and credible sex offender research, it [was] this board member's professional opinion with a reasonable degree of professional certainty that Mr. Best meets the criteria to be classified as a[n SVP] under Pennsylvania law.

*Id*. at 22-23. The Commonwealth marked the SOAB report as Exhibit C-1, but did not formally request that the trial court admit the report into evidence. **See id**.

Best's counsel responded by noting "objections to some of what [was] put in" the SOAB report. **See id**. at 23. Counsel noted that none of Best's

---

[6] The certified record did not contain the transcript of the SVP and sentencing hearing or a copy of the SOAB report, but after an informal inquiry with the trial court, this Court obtained a copy of the SVP and sentencing hearing. As noted herein, the Commonwealth did not move to admit the SOAB report into evidence, and this Court did not receive a copy of the report.

other arrests resulted in convictions because the Commonwealth withdrew or discontinued three cases, the fourth did not involve the filing of criminal charges, and the fifth remained pending. *See id*. at 23-24. Counsel disputed the evaluator's consideration of the several factors, noting: (1) Best's only conviction for sexual offenses involved one adult female, D.C., who did not have mental disabilities; (2) his prior record score was zero; and (3) he did not have a history of using drugs or mental health illness. *See id*. at 23-27.

Counsel also referenced the evaluator's use of the term "personality disorder" but argued that the evaluator did not interview Best as part of the assessment or have enough information to "make a diagnosis like that." *Id*. at 25-26. In response, the trial court noted:

> I'm looking at paragraph 1 under mental abnormalities, personality disorder criteria. In the second paragraph under the number one, the report does say that Mr. Best's behaviors are consistent with a diagnosis of antisocial personality disorder. He has repeatedly shown a disregard for the rights of others through his offending. However, there is insufficient evidence to confirm this diagnosis, including the lack of information about the onset of a conduct disorder before age 15. So, it does -- while they're saying his behavior is consistent, they certainly aren't making a diagnosis. In fact, they're saying there's insufficient evidence[] to really make a diagnosis, or insufficient information.

N.T., 3/12/22, at 26.

Best's counsel concluded her statements, arguing:

> So, those are our objections, and what we would say to that is that . . . I understand what the board is attempting to do, but I believe they've fallen short of the clear and convincing requirement to determine someone as an SVP, because he does have, I believe, eight or nine factors that do not correspond to the

[fourteen]-factor test. So, we would ask that you not find him a sexually violent predator.

*See id*. at 27. Best, however, did not object to the Commonwealth's use of the report at the hearing, the qualifications of the SOAB evaluator to render an expert opinion that he met the criteria for designating him as an SVP, or the Commonwealth's decision not to call the SOAB evaluator as a witness at the hearing. *See id*. at 23-27.

The trial court then ruled as follows:

Okay. Counsel, I have had a chance to listen to your arguments, of course, here today. I've also had a chance to review the assessment that was prepared in this matter in relation to Mr. Best. I've had a chance to review the factors that the assessment noted -- or that the assessor noted when making their recommendation or drawing a conclusion as to whether Mr. Best was, in fact, a[n SVP]. After reviewing all of the paperwork related to this case -- or specifically the [SOAB] assessment, after reviewing the factors that were written about, I am going to find that [Best] is [an SVP]. Based on the assessment and based on the factors, I do believe that there is clear and convincing evidence of such.

*See id*. at 27-28. The trial court then sentenced Best to an aggregate term of ten to twenty years of imprisonment followed by four years of probation. Best timely filed post-sentence motions seeking, in relevant part, a new trial because the verdicts were against the weight of the evidence. The trial court denied the post-sentence motions, and Best timely appealed. Both Best and the trial court complied with Pa.R.A.P. 1925.

Best raises the following issues, which we have reordered for our review:

[1.] Did the trial court commit reversible error by denying Mr. Best's post-sentence motion where the verdict was against the weight of the evidence?

- 6 -

[2.] Was the evidence sufficient to designate Mr. Best as a[n SVP] where the Commonwealth did not call any witnesses at the SVP hearing?

Best's Brief at 9 (reordered).

We first address Best's issue challenging the weight of the evidence supporting his convictions. When considering whether a verdict was against the weight of the evidence, the trial court must first determine whether the verdict "shocks the conscience," that is, whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **See Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (internal citation and quotations omitted). This Court reviews the trial court's exercise of discretion when denying relief, not the underlying question of whether a verdict is against the weight of the evidence. **See id**. We will find an abuse of discretion where the trial court's "judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **See id**. (internal citation omitted).

Best argues that the trial court should have granted his post-sentence motion for a new trial because "the verdict, based on unreliable and contradictory evidence, was pure conjecture." Best's Brief at 23. He asserts that D.C.'s trial testimony that he sexually assaulted her and she did not consent to the encounter was unworthy of belief. He argues that D.C. was a prostitute, agreed to his initial proposition for sex, and suggested the place

for their encounter.  *See id*. at 23-24.  Best adds that D.C. lacked credibility because she did not disclose she had drug issues and was working as a prostitute when she reported the rape in 2013, and she did not inform detectives that she made prior claims of being sexually assaulted.  *See id*. at 24-25.  Best also contends that D.C.'s own criminal history showed that she could not be trusted to tell the truth.  *See id*. at 25.  In sum, Best asserts the trial court should have credited his evidence that he only had consensual intercourse with D.C., and accepted his arguments that D.C. fabricated the account of a rape because she was angry that he ejaculated inside of her and he refused her demands for additional payment.  *Id*. at 24.

The trial court concluded that it properly denied Best's challenge to the weight of the evidence.  The trial court found D.C.'s testimony "extremely credible" and the defense's theory of the case "did not make any sense."  *See* Trial Court Opinion, 6/8/22, at 5 (internal citations to the record and quotations omitted).  The trial court reasoned that D.C. had reasons for not being entirely forthcoming with medical providers and detectives, namely, her fear that they would not believe her if she disclosed that she worked as a prostitute to pay for drugs and had a criminal history.  *See id*. at 5-6.  The trial court added the facts that D.C. almost immediately "flagged down EMTs" and reported the rape, as well as the scarring on her knees, corroborated her testimony of a non-consensual sexual assault.  *See id*. at 6.

Following our review, we discern no basis to disturb the trial court's decision to reject Best's challenge to the weight of the evidence.  The trial

court made findings of fact and credibility based on the evidence and credited D.C.'s trial testimony that while she consented to a limited sexual encounter, she did not consent to a prolonged sexual attack that included oral, vaginal, and anal intercourse, and that Best had forcibly coerced her during the attack. **See** N.T., 7/13/21, at 14-16, 24-27; **see also** Trial Court Opinion, 6/8/22, at 5. Similarly, the trial court stated reasonable bases to reject Best's evidence and arguments that D.C. not only fabricated her initial 2013 reports of a rape but also falsified her 2021 trial testimony because of a dispute over fifteen dollars. **See** Trial Court Opinion, 6/8/22, at 5. Thus, we find no abuse of discretion in the trial court's decision and conclude that Best's challenge to the weight of the evidence merits no relief. **See Clay**, 64 A.3d at 1055.

In his next issue, Best challenges the sufficiency of the evidence underlying the trial court's SVP determination. Challenges to the sufficiency of the evidence present questions of law, and our standard of review is *de novo*, and our scope of review plenary. **See Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006). This Court must review an undiminished record without regard to the admissibility of the evidence. **See Commonwealth v. Sanford**, 863 A.2d 428, 432 (Pa. 2004). Moreover, it is not the role of this Court to question or reweigh the evidence. **See Meals**, 912 A.2d at 222-23. Rather, this Court's sufficiency review is limited to whether the record, when viewed in a light favorable to the Commonwealth, establishes clear and convincing evidence to sustain the trial court's finding that an individual meets the statutory definition of an SVP. **See id**.

The touchstone for an SVP determination is whether the individual convicted of a sexually violent offense has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. *See* 42 Pa.C.S.A. § 9799.12; *accord Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008). Subchapter H of SORNA details the procedures to determine whether an individual is an SVP. *See* 42 Pa.C.S.A. § 9799.24. Specifically, the trial court must order the SOAB to conduct an assessment, after which the SOAB conducts an assessment and submits its report to the district attorney. *See* 42 Pa.C.S.A. § 9799.24(a), (d). The Commonwealth may then praecipe the trial court for an SVP hearing and serve copies of the praecipe and the SOAB report to the defense. *See* 42 Pa.C.S.A. § 9799.24(e)(1). However, as with expert opinions generally, the Commonwealth's offer of opinions stated by an SOAB evaluator must comport with the applicable rules of evidence. *See Commonwealth v. Prendes*, 97 A.3d 337, 360 (Pa. Super. 2014) (noting that "an SOAB expert opinion falls within the general rules regarding expert witnesses"), *overruled sub silentio on other grounds by Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 (Pa. 2015).

Section 9799.24(e) governs the conduct of an SVP hearing and provides, in relevant part:

> (2) *The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses.* . . .

(3) At the hearing prior to sentencing, **_the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator_**.

42 Pa.C.S.A. § 9799.24(e)(2)-(3) (emphases added). The requirements of section 9799.24 are distinct from statutes governing other documents properly before the trial court at the time of sentencing. For example, a presentence investigation report is automatically made "available to the court" for the purpose of determining a sentence. 42 Pa.C.S.A. § 9733(1). Section 9799.24, by contrast, requires that the Commonwealth present clear and convincing evidence and does not expressly allow a court to automatically consider the SOAB report when determining whether to designate an individual as an SVP. **_See_** 42 Pa.C.S.A. § 9799.24(e)(2)-(3).

Best claims that the Commonwealth's reading of the contents of the SOAB report at the SVP hearing was insufficient for the trial court to designate him as an SVP. Best acknowledges that the SOAB evaluator concluded that he met the criteria for classification as an SVP. **_See_** Best's Brief at 20. However, he emphasizes that the Commonwealth failed to call any witnesses at the SVP hearing, establish a foundation for the court to consider the report as substantive evidence, or establish the evaluator's qualifications to render an expert opinion. **_See id_**. at 20-22. He further contends that the evaluator

impermissibly offered opinions based on hearsay allegations from his other arrests and present conviction.[7] *See id*. at 21-22.

The trial court rejected Best's challenge, concluding that the Commonwealth presented the recommendations of the SOAB evaluator. *See* Trial Court Opinion, 6/8/22, at 8. The trial court reasoned that the Commonwealth detailed the similarities in the facts underlying Best's other arrests and his present conviction. The court found that the facts of Best's current offenses demonstrated that Best exceeded the means necessary to achieve the offenses and displayed unusual cruelty. *See id*. at 9. The trial court concluded that the Commonwealth was under no obligation to call the evaluator to testify at the hearing and "the information" the Commonwealth put forth at the hearing provided clear and convincing evidence that Best met the criteria for an SVP. *Id*. at 9-10.

Following our review, we reluctantly conclude that there is no competent record for this Court to conduct a proper sufficiency review. Section 9799.24 imposes a burden on the Commonwealth to praecipe for and produce at the SVP hearing formal evidence, which the Commonwealth did not meet in this case. *See* 42 Pa.C.S.A. § 9799.24(e)(1)-(3). To the extent the Commonwealth elected to proceed solely on the SOAB report, it bore a

---

[7] Because the Commonwealth in the case *sub judice* presented no formal evidence at the SVP hearing, this case presents a different issue than considered in **Commonwealth v. Aumick**, --- A.3d ---, ---, 2023 PA Super 103, 2023 WL 3939850 at *7-8 (Pa. Super. 2023) (*en banc*).

minimal burden of creating a competent record by moving for the admission of the SOAB report into the record or obtaining a stipulation to the report's admission into evidence. **See Prendes**, 97 A.3d at 360 (noting that "an SOAB expert opinion falls within the general rules regarding expert witnesses"). Otherwise, the Commonwealth's burden of production to prove by clear and convincing evidence that Best was an SVP required it to call an expert to provide testimonial evidence.[8]  **See id**.  In the instant case, the Commonwealth merely marked the SOAB report as an exhibit, without formally moving to admit it into evidence, and only summarized the results of SOAB report as a part of arguments to the trial court.  **See** N.T., 3/21/22, at 19-23; **see also Prendes**, 97 A.3d at 360 (noting that "an SOAB expert opinion falls within the general rules regarding expert witnesses").  Moreover, the trial court's reliance on this deficient record and counsel's arguments was improper.  **See Commonwealth v. Allshouse**, 969 A.2d 1236, 1241 (Pa. Super. 2009) (holding that a trial court erred when revoking probation by relying on a letter from a victim's relative and police report when those documents were hearsay, not offered as exhibits, not admitted into evidence, and not contained in the certified record); **see also In Interest of J.B.**, 189

---

[8] We acknowledge that "an expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." **Commonwealth v. Fuentes**, 991 A.2d 935, 944 (Pa. Super. 2010).  However, for a court to properly consider an opinion, the Commonwealth must move for its admission and the trial court must admit the evidence into the record.

A.3d 390, 406 n.19 (Pa. 2018) (stating that counsel's statements are not evidence).

We acknowledge that Best did not object to the Commonwealth's decision to rely solely on the SOAB report at the SVP hearing, nor did he preserve a claim that the Commonwealth should have called the evaluator to testify by raising it at the hearing. *See* N.T., 3/21/22, at 19-22. Moreover, his Rule 1925(b) statement did not include a specific claim that the trial court should not have relied solely on the report.[9] Indeed, Best appears to assume that the trial court had admitted the SOAB report or could properly have considered it as evidence, and his challenges in this appeal largely go to the weight of the analysis and conclusion set forth in the SOAB report. *See* Best's Brief at 20-23.

Under the circumstances of this case, however, we decline to find waiver because the Commonwealth did not carry its initial burden of producing competent evidence at the SVP hearing and the record thus contains no evidence, whether properly or improperly admitted at the hearing, to conduct

---

[9] In his Rule 1925(b) statement, Best asserted: "[t]he evidence was insufficient for the Court to designate Mr. Best as a[n SVP]. The Commonwealth did not call any witnesses at the SVP hearing. Accordingly, the Commonwealth's evidence did not prove by clear and convincing evidence that [he met the statutory definition of an SVP.]" Rule 1925(b) Statement, 5/21/22, at ¶ 2.

a proper sufficiency review or determine whether the error was harmless.[10] Given the apparent misunderstanding shared by the parties and the trial court as to the Commonwealth's burden of production and the admissibility of the opinions stated in the SOAB report, we conclude that the proper remedy is to remand this matter to the trial court for the conduct of a new hearing at which the Commonwealth may admit evidence from which the trial court can render an appropriate determination as to Best's designation as an SVP and this Court can undertake a proper review.

For these reasons, we reject Best's weight of the evidence challenge and affirm the judgment of sentence, but vacate the SVP determination and remand this matter for a new SVP hearing.

Judgment of sentence affirmed in part. SVP determination vacated. Case remanded with instructions. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: _6/29/2023_

---

[10] Best arguably had some role in ensuring the SOAB report was made part of the certified record transmitted to this Court. However, because the Commonwealth did not formally move to admit the SOAB report and the trial court did not admit it, we cannot fault Best for failing to provide this Court with a document that was not made part of the record.

- 15 -