J-A20011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUAMEEN WATSON-GARY | : | |
| | : | |
| Appellant | : | No. 1745 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003213-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUAMEEN GARY | : | |
| | : | |
| Appellant | : | No. 1746 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005069-2023

BEFORE:  MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:　　　　　**FILED SEPTEMBER 10, 2025**

In these consolidated appeals, Quameen Watson-Gary (Appellant) appeals from the judgment of sentence imposed after the violation of parole (VOP) court found him in technical violation, and recommitted him to serve the balance of the back time on his underlying sentences.  Appellant asserts,

_____

[*] Retired Senior Judge assigned to the Superior Court.

*inter alia*, the VOP court lacked sufficient evidence to find him in technical violation of any condition of his parole. After careful review, we vacate the revocation of parole and the VOP judgment of sentence.

In its opinion, the VOP court summarized the procedural history of this case as follows:

> On September 7, 2022, Appellant was arrested [and charged, at CP-51-CR-0003213-2023 (Case 3213), with] … firearms not to be carried without a license, car[rying] firearms in public in Philadelphia, and resist[ing] arrest/other law enforcement.
>
> * * *
>
> On June 4, 2023, while out on bail[] for … Case [3213], Appellant was arrested [and charged, at CP-51-CR-0005069-2023 (Case 5069), with] … receiving stolen property and unauthorized use of motor/other vehicles….
>
> Appellant entered into [] negotiated guilty plea[s at Case 3213 and Case 5069] on October 12, 2023. In [Case 3213], Appellant ple[]d guilty to one count of firearms not to be carried without a license, graded as a third-degree felony. All other charges were *nolle prosed* by the Commonwealth. Appellant was sentenced to six to twelve months of incarceration, followed by two and a half years of reporting probation. Additionally, Appellant was given credit for time served, immediately paroled, and ordered to maintain employment upon release.
>
> [In Case 5069], Appellant ple[]d guilty to on[e] count of receiving stolen property, graded as a third-degree felony. Appellant was sentenced to six to twelve months of incarceration, followed by two and a half years of reporting probation. Appellant was given credit for time served, immediately paroled, and ordered to seek and maintain employment upon his release. Appellant's sentence for [Case 5069] was ordered to run concurrent to the [Case 3213] sentence.

VOP Court Opinion, 8/19/24, at 2-3 (unpaginated) (footnote citations omitted; capitalization and punctuation modified).

In Appellant's sentencing orders at Case 3213 and Case 5069, the VOP court included certain conditions in connection with Appellant's release on parole. These conditions included, *inter alia*, that Appellant must (1) "not possess firearms … or any other deadly weapons"; and (2) notify his assigned parole/probation officer "within 72 hours of any … change of address[.]" Order of Sentence, 10/12/23, at 1 (capitalization modified).[1]

Upon his release on parole in October 2023, Appellant was supervised by the Philadelphia Adult Probation and Parole Department (APPD). The residence that APPD approved for Appellant's housing ("Appellant's residence" or "the apartment") was located in Philadelphia[2] and leased by Appellant's aunt, Donna Gary (Ms. Gary). ***See*** N.T., 10/12/23, at 24; ***Gagnon II***[3] Summary, 4/26/24, at 2 (unpaginated).

---

[1] The respective sentencing orders for Case 3213 and Case 5069 are identical regarding the conditions of Appellant's parole.

[2] Appellant's residence was on the second floor of a multi-unit apartment building. ***See*** N.T., 5/1/24, at 3; ***Gagnon II*** Summary, 4/26/24, at 2 (unpaginated).

[3] ***See generally Gagnon v. Scarpelli***, 411 U.S. 778 (1973) (concluding due process requires that parolees/probationers be given a preliminary (***Gagnon I***) and final (***Gagnon II***) hearing prior to a revocation of parole/probation). "[W]hen a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has been committed." ***Commonwealth v. Allshouse***, 969 A.2d 1236, 1240 (Pa. Super. 2009) (citation omitted). Regarding ***Gagnon II*** hearings, this Court has recognized that

*(Footnote Continued Next Page)*

- 3 -

Shortly after Appellant's release on parole, APPD notified the VOP court of a potential parole violation.[4] Specifically, on April 26, 2024, the APPD officer assigned to Appellant's case, Brian Corkery ("Officer Corkery" or "the probation officer"), filed a "*Gagnon II* Summary" (*Gagnon* Report). The *Gagnon* Report provided, in relevant part, as follows:

> [Appellant] has been compliant with his reporting requirements since the start of his sentence[s in Case 3213 and Case 5069]. He has not tested positive for any illegal substances.
>
> [APPD] was notified by [Philadelphia] Central Detectives of a shooting incident that occurred [in the vicinity of Appellant's apartment)] on [March 25, 2024.[5] On that date, police] responded to a 911 call [placed by the occupant of a third-floor] apartment [(the upstairs neighbor), which was located] above [Appellant's apartment on the second floor]. [The upstairs neighbor] reported hearing what he believed was a gunshot, and [he] later discovered a small hole in the floor of [the upstairs

---

> [t]he first step in a *Gagnon II* revocation decision involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole or probation. It is this fact that must be demonstrated by evidence containing "probative value." Only if it is determined that the parolee or probationer did violate the conditions does the second question arise: should the parolee or probationer be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

*Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000) (internal citations, ellipses, brackets and some quotation marks omitted).

[4] The VOP court judge, who presided over the parole revocation proceedings, imposed Appellant's underlying sentences in Case 3213 and Case 5069.

[5] For ease of reference, we refer to the alleged March 25, 2024, incident as "the shooting incident." Appellant was not on house arrest at the time of the shooting incident. N.T., 5/28/24, at 6.

neighbor's] bedroom.[6] The assigned detectives believe the gunshot originated from [Appellant's] apartment. Photographs were [also] provided ….[7]

On [April 17, 2024], a probation search [of Appellant's residence] was completed[ by] a joint team[, including] … Philadelphia Police & APPD[.] … [Authorities made c]ontact with [Ms.] Gary …. [Ms. Gary] reported that [Appellant] was kicked out of the apartment [the] day after the shooting incident[. Ms. Gary] said [that Appellant is no longer on] her lease. ….

***Gagnon*** Report, 4/26/24, at 2 (unpaginated) (footnotes added; punctuation, capitalization, and paragraph formatting modified).[8] The ***Gagnon*** Report concluded, "It is recommended that [Appellant's] probation/parole be revoked and a period of incarceration be imposed." ***Id.***[9]

The VOP court held a brief ***Gagnon I*** hearing on May 1, 2024, wherein Officer Corkery appeared as the sole witness. Officer Corkery began to testify that on March 25, 2024, "there was an incident in which the police responded to a 9-1-1 call regarding a shooting" in the vicinity of Appellant's apartment.

---

[6] There is no other mention of the upstairs neighbor in the certified record, aside from the ***Gagnon*** Report and Appellant's subsequent parole violation hearings.

[7] There are no photographs in the certified record. However, Appellant concedes that "[t]he Commonwealth provided the [VOP court] with photographs of a hole in the floor of the upstairs neighbor." Appellant's Brief at 16 n.5.

[8] An identical ***Gagnon*** Report was filed on May 9, 2024.

[9] There is no indication in the record, or VOP court docket, that either APPD or the Commonwealth filed a notice of parole violations, or a separate petition to revoke parole.

N.T., 5/1/24, at 3.[10] Appellant's trial counsel immediately objected to continuing with the proceeding, asserting Appellant has "not received sufficient discovery in this matter[,]" including photographs of the upstairs neighbor's apartment. *Id.* at 4; *see also id.* (Appellant asking the VOP court to schedule another hearing). The VOP court granted Appellant's objection, continued the matter, rescheduled the *Gagnon* hearing for May 14, 2024, and lodged a detainer against Appellant. *Id.* at 5-6.

Significantly, at the commencement of the May 14, 2024, hearing, the prosecutor informed the VOP court that Officer Corkery "was supposed to be here today. I tried to get him in. He's not here. I request to proceed without him." N.T., 5/14/24, at 3. The VOP court granted the prosecutor's request and proceeded with the hearing. *Id.* at 3. **Notably, the Commonwealth did not present testimony from any other witness, either at this hearing or thereafter.**[11]

_____

[10] The entirety of Officer Corkery's testimony consisted of the following:

> So on the 25th of March, there was an incident in which the police responded to a 9-1-1 call regarding a shooting where it's maybe a triplex or duplex [apartment building], and [Appellant's residence is] on the second floor.

N.T., 5/1/24, at 3 (paragraph break omitted).

[11] The only witness at the May 14, 2024, hearing was a defense witness, Appellant's brother, who testified that Appellant would be permitted to reside in the residence of their grandmother in Philadelphia, if Appellant was released from custody. *See* N.T., 5/14/24, at 15-16.

At the May 14, 2024, hearing, the VOP court considered argument from the parties pertaining to whether Appellant violated the conditions of his parole. *See id.* at 3-10. Appellant's counsel asserted, in pertinent part, as follows:

I'm asking that the detainer be lifted and [that Appellant's parole] be continued.

* * *

We have no pictures or any evidence that [the shooting incident] … happened on March 25th. As of today, … there have been no charges filed against [Appellant with respect to the shooting incident].

*Id.* at 4. Appellant countered no technical or direct parole violation was established, and asked the VOP court to release him from custody and approve a new residence, in light of his displacement from the apartment.[12] *See id.* at 4-5, 8-9; *see also id.* at 5 (Appellant recognizing that "the *Gagnon* [Report] mentions [Appellant] no longer could stay with [Ms. Gary]"). In response to Appellant's argument, the prosecutor stated as follows:

Your Honor, I'm a bit perplexed by [Appellant] saying there were no pictures [regarding the shooting incident] …. As you'll recall, [**Officer Corkery**] **spoke about this matter at the** [**May 1, 2024, hearing**]; furthermore, there were pictures provided by one of the [] detectives [involved in the investigation of the shooting incident]. …. Since [Appellant] was already on probation for [unlawful firearm possession,] for which he pled guilty, the Commonwealth would ask [that the VOP court] find him in violation [of his parole] and sentence him to his back time ….

_____

[12] Appellant maintained he had two purportedly appropriate and available housing resources, and emphasized his family support and available community program services. N.T., 5/14/24, at 5, 12-15.

*Id.* at 5-6 (emphasis added; paragraph formatting modified).

After Appellant indicated he desired to speak at the May 14, 2024, hearing, the VOP court considered his following statement:

> The day of [the shooting] incident[,] I wasn't in the [apartment]. I talked to [the upstairs] neighbor the day this happened. I told him … [that Ms. Gary had] called me[] and … [informed me about] whatever happened in the [apartment.] I don't know what happened in the [apartment]. I went upstairs to talk to [the upstairs] neighbor, and … he didn't even know what happened. I didn't really know what happened. We both found the hole in the floor, I guess.

*Id.* at 11; *see also id.* at 12 (Appellant asserting that "[Ms. Gary's] friends … were inside" the apartment at the time of the shooting incident). Appellant conceded that shortly after the shooting incident, Ms. Gary "told [Appellant] to get out of the [apartment] and stuff." *Id.* at 11. The VOP court then asked Appellant, "Why would [Ms. Gary] tell you to get out of the [apartment] if you didn't know anything about [the shooting incident]?" *Id.* Appellant replied, "I'm on probation inside [the apartment]. The cops were coming there for me." *Id.*

At the conclusion of the May 14, 2024, hearing, the VOP court determined that Appellant

> potentially might have been in the apartment the day the gunshot went off. There's no doubt in my mind a gunshot went off in the apartment. There's no doubt in my mind that [Appellant] knows who fired the shot. Even if he wasn't present, he knows who was there. He knows what happened.

*Id.* at 13-14 (paragraph formatting modified).[13]

The VOP court continued the matter pending a ***Gagnon II*** hearing, and directed Appellant's counsel to provide the court with

> a real plan for [Appellant] once [the court] release[s] him from custody, and we'll revisit this, but I am not releasing him from custody until I am assured [that Appellant] has a place to [reside], and [that he resides with] an individual who is not themselves on some sort of court supervision, and [that Appellant is] going to be in a place where [APPD] is going to be able to supervise him.

*Id.* at 16-17. The VOP court declined to lift the detainer. *Id.* at 17.

Appellant's ***Gagnon II*** hearing occurred on May 28, 2024.[14] Appellant initially addressed the VOP court's concern regarding housing. N.T., 5/28/24, at 3-4. Appellant claimed that he could reside with his paramour, who was unable to attend the hearing because she was appearing in court in another county, and asked the VOP court to release him on house arrest. *Id.* at 4. The VOP court then considered argument from the parties, which we reproduce in full, in light of its significance to this appeal:

> [The prosecutor]: Your Honor, the Commonwealth's position remains the same as it was last the time. This is a serious violation. **You heard the direct testimony from the probation officer who did come in, who went out to the** [**apartment**] **and noted the gunshot himself and who spoke to detectives in this matter.**

---

[13] The VOP court issued no statement finding probable cause existed that Appellant had violated a condition of his parole. ***See Allshouse***, 969 A.2d at 1240.

[14] We hereinafter collectively refer to the May 1, 14, and 28, 2024, hearings as the "violation hearing."

House arrest, Your Honor, isn't appropriate. [Appellant] was already on supervision for a very serious matter for [unlawful firearm possession in Case]… 3213 …. So [the Commonwealth's] position remains the same, that [Appellant] needs to be found in violation [of his parole] and sentenced to a carceral term.

[Appellant's counsel]: As Your Honor knows, I was not the [counsel representing Appellant] at the last listing, but **my understanding is the probation officer has not come in to testify.**

THE COURT: The probation officer was definitely here. I lodged a detainer. **The probation officer was here and testified.**

The probation officer was not here at the last listing[, *i.e.*, May 14, 2024,] where [the VOP court] essentially spoke about getting a plan in place [for Appellant's housing if he was released], but **the reason why** [**Appellant**] **is in custody is because the probation officer came in and testified about having gone out to the** [**apartment**] **and having seen the bullet-hole for himself.**

[Appellant's counsel]: But, otherwise, the testimony about how the bullet-hole came to be and the hearing of the shot is hearsay. **No one testified directly to that.**

THE COURT: **That's correct.** There was a 9-1-1 call [placed after the shooting incident by the upstairs neighbor]. When police arrived, they were informed that someone had shot through the apartment.

*Id.* at 7-8 (emphasis added; paragraph formatting modified).

The VOP court announced its ruling as follows:

My concern is [that Appellant makes conflicting] claims that he was not [at the apartment the] day [of the shooting incident,] and he [simultaneously] claims that he was present [at the apartment, *i.e.*, when Appellant met with the upstairs neighbor and they observed the purported bullet hole together]. [Appellant] claims that he talked to [Ms. Gary] about [the shooting incident] and that [Ms. Gary] subsequently put him out [of the apartment]. That's what [Appellant] said, and then he went on to say he has no idea[] what happened in the apartment.

- 10 -

> I don't believe [Appellant]. I think that's a lie. I think [Appellant] lied to me when he said he didn't know what happened in th[e] apartment. Even if [Appellant] wasn't present, I think he knows what happened in th[e] apartment, and my concern is that he's young and immature and not really capable -- or at least has not demonstrated that he's capable of being supervised in the community without some additional supports….

*Id.* at 8-9. The court then asked Appellant if he desired to state anything prior to the court's decision; he declined. *Id.* at 11.

At the conclusion of the *Gagnon II* hearing, the VOP court stated it found Appellant "in technical violation of [his] supervision" in Case 5069 and Case 3213. *Id.* Accordingly, the court revoked Appellant's parole, sentenced him to serve the balance of back time on each matter,[15] and directed the respective probationary terms to stand. *Id.* at 11, 13. The VOP court ordered that Appellant be reentry eligible and paroled on July 8, 2024 (*i.e.*, 41 days later). *Id.*

On June 3, 2024, Appellant filed a motion for reconsideration of sentence, asserting "[t]he evidence as presented did not establish a violation of the terms or conditions" of Appellant's parole. Motion for Reconsideration of Sentence, 6/3/24, ¶ 4. Appellant claimed "[n]either the probation officer nor the District Attorney's Office have provided any evidence that [Appellant] allegedly committed a new crime or violated a condition of his [parole]." *Id.*

---

[15] The VOP court ordered Appellant's back-time sentences at Case 5069 and Case 3213 to run concurrently with each other. N.T., 5/28/24, at 13.

¶ 6 (capitalization modified). The VOP court summarily denied the motion for reconsideration in an order entered on June 7, 2024. These timely appeals followed.[16]

On August 8, 2024, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement, in which he asserted, *inter alia*, the VOP court

> erred in finding that Appellant violated parole as the Commonwealth failed to establish, by a preponderance of the evidence, that Appellant committed the violation alleged in the **Gagnon** [Report], or that he committed a new crime, where there was insufficient evidence he fired or even possessed a gun in [the apartment].

Concise Statement, 8/8/24 (capitalization and punctuation modified).

The VOP court issued its Rule 1925(a) opinion on August 19, 2024, and concluded, in relevant part, that

> Appellant was in technical violation of his parole when he moved from the residence approved by A[PPD, *i.e.*, the apartment,] without permission to do so, … and did not advise [APPD] of his new address. [Regarding the shooting incident, the VOP c]ourt also believes that Appellant either shot a firearm himself or was present [in the apartment] when it occurred[,] and constructively possessed the firearm. [The VOP c]ourt properly revoked his parole after finding him in technical violation.

VOP Court Opinion, 8/19/24, at 4 (unpaginated).

Appellant presents two issues for our review:

_____

[16] Appellant filed separate notices of appeal in Case 3213 and Case 5069. Upon Appellant's application, this Court consolidated the appeals, docketed at 1745 EDA 2024 and 1746 EDA 2024. Order, 10/14/24. **See** Pa.R.A.P. 513. Although Appellant is represented by separate counsel in the appeals at 1745 EDA 2024 and 1746 EDA 2024, he has filed a consolidated brief.

A. Did the [VOP] court err in revoking Appellant's parole based solely on information that a gun was fired in his residence, where there was insufficient evidence that he fired or possessed a gun, or otherwise violated a specific condition of parole?

B. Did the [VOP] court err and violate due process when it asserted[,] for the first time in its Pa.R.A.P. 1925 opinion[,] that parole revocation was justified based on Appellant's purported failure to report a change of address, an uncharged technical violation which Appellant had no notice of and which was not proven at the violation hearing?

Appellant's Brief at 2 (footnote omitted; capitalization modified).

This Court has stated that "[f]ollowing parole revocation and recommitment, the proper issue on appeal is whether the trial court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement." *Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa. Super. 2008) (citing *Commonwealth v. Mitchell*, 632 A.2d 934, 936 (Pa. Super. 1993)); *see also id.* (clarifying that "an appeal of a parole revocation is not an appeal of the discretionary aspects of sentence."). This Court has explained that

> the purposes of a court's parole-revocation hearing—the revocation court's tasks—are to determine **whether the parolee violated parole** and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment,[17] are in order.

---

[17] An "order revoking parole does not impose a new sentence; [rather,] it requires [the defendant] … to serve the balance of a valid sentence previously imposed." *Commonwealth v. Simmons*, 262 A.3d 512, 528 (Pa. Super. 2021) (*en banc*) (citation omitted).

*Commonwealth v. Baldassano*, 330 A.3d 1255, 1259-60 (Pa. Super. 2025) (footnote and emphasis added) (quoting *Kalichak*, 943 A.2d at 290-91).

"The Commonwealth bears the burden to prove a parole violation by a preponderance of the evidence." *Commonwealth v. Reed*, 285 A.3d 334, 337 (Pa. Super. 2022) (citation omitted); *see also Commonwealth v. Easter*, 331 A.3d 675, 680 (Pa. Super. 2025) (defining "preponderance of the evidence" as "the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor." (citations and internal quotation marks omitted)). Once a VOP court finds a parole violation occurred, by a preponderance of the evidence, "the decision to revoke parole is a matter for the court's discretion. We will not disturb the [VOP] court's decision absent an error of law or abuse of discretion." *Id.* at 337 (internal citations, brackets, and quotation marks omitted).

> A mere error of judgment does not constitute an abuse of discretion. Rather, a trial court abuses its discretion if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record.

*Commonwealth v. Westlake*, 295 A.3d 1281, 1286 (Pa. Super. 2023) (citation and brackets omitted).

Technical violations of parole,[18] such as the failure to report to the probation department or not residing at a given address, can, alone, be sufficient to support a parole revocation. *Mitchell*, 632 A.2d at 937. However, a trial court may only revoke parole after finding the defendant violated a condition of his parole for which he had notice. *See* Pa.R.Crim.P. 708(B)(2); *see also Commonwealth v. Koger*, 294 A.3d 393, 402 (Pa. 2023) ("[P]arole may be revoked only after a court finds the defendant has violated an actual condition for which he had notice." (citing, *inter alia*, Rule 708(B)(2)).

Instantly, in his first issue, Appellant argues the VOP court abused its discretion in revoking his parole, where the Commonwealth failed to meet its burden of proving, by a preponderance of the evidence, that Appellant violated any condition of his parole. *See* Appellant's Brief at 8-19. Appellant claims to the extent that the VOP court found he perpetrated the shooting incident, such finding "is entirely unsupported by the evidence" and "was not proven at the [violation] hearing[.]" *Id.* at 16; *see also id.* at 14 (asserting Appellant "did not and could not violate a specific parole condition by merely being present in [the apartment] when another person commit[t]ed a crime therein, or by merely knowing who committed such crime…."). According to Appellant,

---

[18] "A 'technical violation' of parole results from a violation of parole conditions." *Mitchell*, 632 A.2d at 937 (citation omitted); 61 Pa.C.S.A. § 6138(c) (governing technical parole violations).

when "[p]resented with wholly insufficient proof by the Commonwealth, the [VOP] court improperly shifted the burden to [Appellant] to disprove any 'connection' with the gun" and shooting incident. *Id.* at 12.

Appellant further contends the VOP court lacked any evidence upon which to conclude that he had violated the condition of his parole requiring that he report to APPD, within 72 hours, any change in his residence (residency-change violation). *Id.* at 9. According to Appellant, the VOP court improperly raised the purported residency-change violation, for the first time, in its Pa.R.A.P. 1925(a) opinion. *Id.* (pointing out that the residency-change violation "appeared nowhere in the *Gagnon II* summary and was not even mentioned at the violation hearing.").

Based upon the foregoing, Appellant contends the VOP court improperly revoked his parole and recommitted him to serve the balance of his sentences. *Id.* "Because a technical violation was not proven, the court's revocation order must be vacated." *Id.*

The Commonwealth counters the VOP court's decision to revoke Appellant's parole was proper and supported by the preponderance of the evidence, which showed that, in technical violation of the conditions of his parole, Appellant (1) possessed a firearm in connection with the shooting incident; and (2) committed a residency-change violation. *See*

Commonwealth's Brief at 9-16;[19] *see also id.* at 9 (asserting "the relevant facts [to establish these technical violations] were set forth in the ***Gagnon*** [Report]"). Regarding possession of a firearm, the Commonwealth maintains that

> in order to find [Appellant] in violation of parole, the [VOP] court did not need to conclude that he **fired** a gun or even that he possessed one in a **criminal** manner. His actual or constructive possession of a firearm was by itself a sufficient basis for revoking parole.

*Id.* at 10 (emphasis in original; citations omitted). The Commonwealth further asserts it proved, by a preponderance of the evidence, Appellant's residency-change violation. ***See id.*** at 13-16.

> The fact that three weeks after the shooting incident[, APPD] went to … [the] apartment—the place where [Appellant] had represented he would be living while on parole—and thereupon learned from [Ms. Gary] that she had kicked [Appellant] out of the apartment three weeks earlier[,] was a sufficient basis for the [VOP] court to conclude that it was "more likely than not" that [Appellant] had failed to notify his parole officer within seventy-two hours of his change of address, as he was required to do.

*Id.* at 13-14.

In its Rule 1925(a) opinion, the VOP court determined its parole revocation ruling was supported by sufficient evidence:

---

[19] The Commonwealth maintains that "[a]lthough [Appellant] was eventually paroled on this case, he was subsequently taken into custody again after he was charged with attempted murder and other crimes in a different matter. ***See Commonwealth v. Quameen Gary***, CP-51-CR0000649-2025." Commonwealth's Brief at 6 n.3. The record supports the Commonwealth's claim. ***See Gagnon II*** Summary, 7/3/25, at 1-2 (unpaginated); ***see also id.*** at 2 (stating Appellant committed the crimes in December 2024).

Appellant's approved housing for his parole supervision was with [Ms. Gary] at [the apartment]. However, after [the upstairs] neighbor called the police reporting gunfire and found a bullet hole in his floor, indicating someone shot through the ceiling … below, Appellant moved out of [the apartment]. [Appellant] did not advise [APPD] that his residence had changed.

On May 28, 2024, at Appellant's [*Gagnon II*] hearing, he asked for his parole to be continued or to be placed on house arrest. The Commonwealth stated that [it] did not believe house arrest was appropriate in this matter and asked for Appellant to be sentenced to this back time. [The VOP] court found that Appellant had no suitable housing from which he could be supervised [] for the duration of his parole and probation supervision. Because [Appellant] left his approved residence, did not advise [APPD] of his new residence, and did not get another residence approved by [APPD], [the VOP] court properly found him in technical violation and sentenced him to his back time on each of his matters with their respective probation tails to remain.

Further, [the VOP] court did not find Appellant's explanation as to how a bullet hole came to be in … [the upstairs neighbor's apartment] truthful. At the hearing on May 14, 2024, Appellant conceded that he and the [upstairs] neighbor, who called the authorities about the shooting [incident], spoke the day the incident happened and "found the hole in the floor …." [N.T., 5/14/24, at 11.] However, Appellant claimed he was not [at the apartment] and did not know what happened the day of the alleged shooting. [The VOP] court asked Appellant, "Why would [Ms. Gary] tell you to get out the [apartment] if you didn't know anything about it?" [*Id.*] Appellant responded stating, "I'm on probation inside that house. The cops were coming there for me." [*Id.*] In taking Appellant's testimony into consideration[, the VOP] court stated, "[t]here's no doubt in my mind a gunshot went off in the apartment. There's no doubt in my mind that [Appellant] knows who fired the shot …[.] He knows what happened." [*Id.* at 14.]

Further, [at the *Gagnon II* hearing] on May 28, 2024, [the VOP] court expressed,

My concern is [Appellant] claims that he was not [at the apartment] that day and he claims that he was present. He claims that he talked to [Ms. Gary] about [the

- 18 -

shooting incident] and [stated] that [she] subsequently put him out [of the apartment]. That's what [Appellant] said, and then he went on to say he has no idea what happened in the apartment.

I don't believe him. I think that's a lie. I think [Appellant] lied to me when he said he didn't know what happened in [the] apartment. Even if [Appellant] wasn't present, I think he knows what happened in [the] apartment ….

[N.T., 5/28/24, at 9.]

[The VOP] court believes that Appellant was the individual who fired the shot into [the upstairs] neighbor's home or, at bare minimum, jointly possessed the firearm used, and the possession violated the firearm possession condition of his parole.

VOP Court Opinion, 8/19/24, at 5-6 (unpaginated) (footnote citations omitted; capitalization and punctuation modified); *see also id.* at 8 (VOP court finding "Appellant could not provide [the VOP] court with a plausible explanation [as to] why [Ms. Gary] would ask him to move out if he truly had nothing to do [with] or had no knowledge of the [shooting incident].").

Upon review, we conclude the VOP court improperly determined that the Commonwealth met its burden of establishing, by a preponderance of the evidence, that Appellant committed any violation of his conditions of parole. *See Reed*, *supra*, at 337. At Appellant's violation hearings, the **only witness** the Commonwealth presented was Officer Corkery, who, as discussed *supra*, **offered one sentence of testimony** at the *Gagnon I* hearing on May 1, 2024. *See* N.T., 5/1/24, at 3 (Officer Corkery testifying

- 19 -

that on March 25, 2024, "there was an incident in which the police responded to a 9-1-1 call regarding a shooting" in the vicinity of the apartment).

Initially, regarding Appellant's purported violation for possessing a firearm, as explained *supra*, at the **Gagnon II** hearing, the prosecutor asserted that the VOP court had previously "heard the direct testimony from the probation officer who did come in, who went out to the [apartment,] and noted the gunshot himself and who spoke to detectives in this matter." N.T., 5/28/24, at 7. Immediately thereafter, the VOP court found, *inter alia*, that

> the reason why [Appellant] is in custody is because **the probation officer came in and testified about having gone out to the** [**apartment**] **and having seen the bullet-hole for himself.**

*Id.* at 8 (emphasis added). The VOP court's finding in this regard is belied by the record. Nothing in the probation officer's single sentence of testimony suggested that he personally observed a bullet hole in the apartment.[20]

Additionally, the Commonwealth presented no witnesses pertaining to Appellant's purported residency-change violation. Indeed, at Appellant's **Gagnon II** hearing, the VOP court (1) **made no mention of a residency-change violation**; and (2) focused **exclusively** upon the shooting incident as forming the basis of Appellant's technical parole violation. **See** N.T., 5/28/24, at 8-9, 11. The record confirms Appellant's claim that the VOP court

---

[20] Moreover, we reiterate that there are no photographs contained in the certified record.

asserted the residency-change violation, for the first time, in its Pa.R.A.P. 1925(a) opinion. ***See*** Appellant's Brief at 9 (correctly pointing out the residency-change "violation appeared nowhere in the ***Gagnon II*** summary and was not even mentioned at the violation hearing.").

Based upon the foregoing, we conclude the VOP court "erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit [Appellant] to confinement," as the Commonwealth failed to adduce sufficient evidence that Appellant had violated any condition of his parole.[21] ***Kalichak***, 943 A.2d at 291. Accordingly, as the VOP court lacked a legally sufficient basis upon which to revoke Appellant's parole, we vacate the revocation of parole and the judgment of sentence imposed by the VOP court.[22]

Revocation of parole and VOP judgment of sentence vacated. Jurisdiction relinquished.

_____

[21] In light of our granting Appellant relief on his first issue, we need not address his second issue.

[22] We need not remand for further proceedings. ***See***, ***e.g.***, ***Commonwealth v. Lee***, 262 A.3d 509, 807 EDA 2020 (Pa. Super. 2021) (unpublished memorandum at 9) (citing ***Commonwealth v. Foster***, 214 A.3d 1240, 1253 (Pa. 2019), and stating "where a [probation/parole] revocation is reversed based on insufficiency, the Commonwealth is not entitled to a remand for a new ***Gagnon II*** hearing to try and establish a violation that it already had the opportunity to prove but did not."); ***see also*** Pa.R.A.P. 126(b) (providing this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/10/2025</u>